The Southern Minnesota Railroad Company, Appellant,
vs. Thomas B. Stoddard, Respondent,

APPEAL FROM THE DISTRICT COURT OF HOUSTON COUNTY.

All railroad charters that do not directly express the contrary, must be taken to allow the exercise of such a discretion in the location of the route as is incident to an ordinary practical survey, made with reference to the nature of the country to be passed over, and the obstacles to be encountered or avoided, not deviating substantially from the course and direction indicated by the charter.

Since the organization of the State government, the District Courts are Courts of general jurisdiction, and may entertain all cases jurisdiction of which is not conferred upon some other Court by the Constitution, or some Statute. The case of *Castner & Hinkley vs. Chandler & Green*, 2 *M. R.*, 86. was decided under the Territorial government, and is not authority since the Constitution. See *Agin vs. Heyward, ante, p.* 110.

The above named Respondent brought this action in the District Court for Houston County, to restrain the Appellant by injunction, from building and operating a railroad across his lands lying situate in Township No. 104, N. of R. 4 W., in county of Houston, which lands are described in complaint as follows, to wit : S.E. quarter of sec. 22, and W. half of N. E. quarter of the same section, town and range aforesaid, except twenty acres out of the N.E. corner of last-mentioned tract.

It is alleged in the complaint, that before and at the time of the committing of the several grievances complained of therein, Respondent was a citizen of the United States of America, then residing in the State of Wisconsin ; that he was seized in fee of said lands ; that Appellant was a body politic and corporate, created by and under a certain Legislative act, to wit :

" An Act to Incorporate the Root River Valley and Southern Minnesota Railroad Company," approved March 2, 1855. That it was organized under said act, and known and described by said name and style aforesaid, until its name and description was changed by statute law, approved May 23d, 1857, to that of " Southern Minnesota Railroad Company,"

by which it was thereafter, and at the time of the commencement of this action, known and described in law.

That by the name and style aforesaid, under the aforesaid act of incorporation, and two subsequent acts amendatory thereof, approved respectively February 27th, 1857, and May 23d, 1857, said corporation, (this appellant,) among other things, was authorized and empowered by law to survey, locate and construct, &c., certain railroads, specified in said act of incorporation and amendment, from the village of Hokah, in said Houston county, as the eastern terminus, westwardly, by the most feasible and practicable route, and at its pleasure to alter the line thereof, without changing the said eastern terminus, and with the privilege of a branch, " starting from (said village of) Hokah, and running up the west bank of the Mississippi river, by the way of Target Lake, to La Crescent, in Houston county."

But not with the privilege of a branch starting from Hokah, and running to La Crescent by any other route than that, *i.e.*, starting from " Hokah and running up the west bank of the Mississippi river, by the way of Target Lake, to La Crescent."

That up to the time of commencement of this action, appellant had wholly neglected to construct any part or portion of the main track from Hokah, westerly, but had since its organization, and before the commencement of this action, commenced the construction of the said branch route, and committed the grievances mentioned in said complaint, and in the manner there stated, to wit : had not located it from Hokah up the west bank of the Mississippi river, by the way of Target Lake, as required by acts of incorporation and acts amendatory thereof; and on the contrary had located and commenced the work for the construction thereof on a route at least one and one-half miles westerly of said west bank, and then were constructing the same at least three-fourths of a mile on and across the Respondent's said land. That the actings and doings of said Defendant in the location and struction of said road there, over said land, consisted in divers acts of grading, by digging and removing of earth there on said land, and all this contrary to law, and against

the will and without the license or consent of Plaintiff. And that, thereof Defendant had due notice.

That Defendant did declare it to be its plan, purpose and intention immediately to proceed with said work on said land, to completion of the grade for said branch road there, as and for a permanent work there, and on completion of said grade to lay and put down permanently thereon a railway track of iron rails, and use the same as railroad track or way for running divers locomotive engines, cars, &c., to be propelled on and along over the said track by steam.

That said Plaintiff believed, &c., unless restrained by injunction, Defendant would carry its plan and purpose into execution ; and if it did it would be a permanent private nuisance to him (said Plaintiff,) especially injurious, and render his said lands nearly valueless to him.

The first defence set up in answer is in these words : " That in the location or commencement of construction of the branch track, of the main track of this road, alleged in the complaint, or any part thereof, they have not done, or do not design or intend to vary or change the route thereof to any other than from Hokah, and running up the west bank of the Mississippi river, by way of Target Lake to La Crescent."

" And they aver and state that the said location and commencement of construction of said branch track, for which complaint is made by the said Plaintiff in this action, are where the said branch passes on and over the land of the Plaintiff, as stated in said complaint, and elsewhere through its entire length, on the said route from Hokah, "and running up the west bank of the Mississippi river by the way of Target Lake to La Crescent," as allowed by the said several acts of the Legislature referred to in said complaint, and not elsewhere."

" And Defendant denies that the location, completion and running of said branch road as the Defendant is designing and intending to do, will cause the said work to be a private nuisance, as alleged in the complaint or otherwise. But, on the contrary, the same will be a public work, carefully and properly constructed and operated as by law, the Defendant

is authorized and empowered to do, under and by virtue of the said several acts of the Legislature," which said location, commencement of construction, and intended completion and operation of the said branch road are and will be the same and no other, as the alleged wrong and injuries stated in the complaint.

Points and Authorities for Appellants.

I.—The complaint does not state facts sufficient to constitute a cause of action.

*a* It fails to show the amount in controversy to exceed $100, and therefore, that the District Court had jurisdiction of the matter.  *Constitution, art. 6, sec. 5; 2 Minn.,* 86.

*b* The complaint does not even attempt to show any necessity for a resort to the extraordinary remedy by injunction, "for the furtherance of justice, and the protection of the Plaintiff's rights," as is requisite, to warrant the exercise of that power.  *Bruce vs. Delaware and Hudson Canal Co.,* 19 *Barb.,* 378–9.  "When the remedy at law is adequate, Courts of Equity will not interpose by injunction."  *Willard's Eq.,* 357; *Adams' Eq.,* 453, (194); *Ib.,* 478, (207.)  The damages must be irreparable, and the law furnish no adequate remedy, *ib.* 481, and notes citing *Cutting vs. Carter,* 4 *Hen. and Mumf.,* 424; *Poindexter vs. Henderson, Walker's Rep.,* 176; *Atkins vs. Chilson,* 7 *Met.,* 398; *Spooner vs. McConnell,* 1 *McLean,* 338.

II.—The entire case, including the pleadings and proofs, shows conclusively, that no wrong has been committed, or threatened, on the part of the Appellant, and that the judgment restraining the company from the lawful prosecution of their business, in building and operating the road, was erroneous, and should be reversed.

The answer discloses, in the second defence, what we deem the rights of the company, under these acts, and the action of the company under them.  The company accepted the provisions of this act.  The evidence fully sustains these allegations.

1. Under the act of May 22, 1857, the company have a

right to build, and are building, the New Railroad, thereby authorized to be built, "from La Crescent via Target Lake, up the Valley of the Root River," etc. No material variation is averred, or shown, in not passing by the way of Target Lake.

2. Under the other acts referred to, the company have a right to build, and are building the old railroad authorized by their original act of incorporation, as amended, from La Crescent to Hokah, etc., by the most feasible and practicable route.

3. Coinciding as the two roads do, from La Crescent as far up the Root River valley as Hokah, the company build both as one road.

c Though as a general principle of law, it is true that corporate powers are to be strictly construed, as against the corporation, the authorities are equally conclusive, that with a grant of power, all incidents necessary to make the power effectual are also granted. *Angel & Ames on Corporations*, 3; 2 *Kent*, 298; 5 *Conn. Rep.*, 232; *Mohawk Bridge Co. vs. U. & S. R. R. Co.*, 6 *Paige*, 554, and cases there cited. Also, 4 *Wheat.*, 636; 2 *Min.*, 20.

Points and Authorities for Respondent.

I.—Plats of surveys of public lands certified by the Register of the Land office of the District in which such land is situated, to be a correct copy of the certified copy on file in his office, of the original plat of such surveys, entitles such certified copy to be read and used in evidence in the courts of this State. *Stat. of Min.*, 687, *sec.* 90; *U. S. vs. Breward*, 16 *Peters*, 143; *2d American Chancery Digest*, 571, *sec.* 53, they have accorded to them the force and character of a deposition.

II.—The act of incorporation, and resolution of acceptance thereof by the R. R. V. & S. M. R. R. Co., and acts amendatory of the act of incorporation, locate the branch of the S. M. R. R., "starting from Hokah and running up the west bank of the Mississippi river by way of Target Lake, to La Crescent, in Houston county, in the Territory of Minnesota," and where the language used in framing a statute is unambiguous, and the intention of the lawgivers apparent without the

aid of extrinsic and explanatory matter, the language used is to be first considered as being the best evidence of what that intention is.   Courts will expound the language according to the common sense and ordinary meaning of the words, and will look at the whole act, and if they find in any particular clause an expression not so large and extensive in its import as those used in other parts of the same statute, if upon a view of the whole act they can collect from the more large and extensive expression used in the other parts the real intention of the Legislature, it is their duty to give effect to the larger expression.   *Act of incorporation, approved March 2, 1855, sec. 2; Resolution of acceptance by R. R. V. & S. M. R. R. Co., July 4th, 1855; Amendment of act of incorporation, approved Feb. 27, 1857, sec. 1; Amendment of act of incorporation, approved May 23, 1857, sec. 1 and 2; Same location required by grant of lands to the Territory of Minnesota, approved March 3d, 1857, sec. 1; Act to accept the grant, &c., approved May 19, 1857; Act to execute trust created by land grant, approved May 22, 1857, chap. 3, sec. 1, 2 and 3; Resolution of acceptance of grant by R. R. V. & S. M. R. R. Co.; Min. and Pacific R. R. Co. vs. Sibley, 2 Min. R., 13; 7 Mass., 526; Mason vs. Finch, 2 Scam., 223; U. S. Digest, vol. 5, 809, sec. 60; Croswell vs. Van Buren and Crane, 7 Barb. Sup. Court R., 191; Walford on Railways, 65.*

III.—Statutes incorporating companies conferring privileges and professing to give the public certain advantages in return, are to be construed strictly against the corporation, and literally in favor of the public and individuals.   *Parker vs. Great Western Railway Co., 7 M. & Gra., 263; Grant on Corporations, 319, 300; The Mohawk Bridge Co. vs. The Utica & Schenectady R. R. Co., 6 Paige, 554; The Proprietor of the Charles River Bridge vs. The Proprietors of Warren Bridge, et. als., 11 Peters, 420; Perrine vs. Chesepeake & Delaware Canal Co., 9 How. Sup. Ct. R., 172; Walford on Railways, 62, paragraph 465.*

IV.—Courts of Equity will interfere by injunction to prevent the abuse of the powers granted a corporation, when exercised to the injury of individuals, so as to prevent rights of possession, and property being injured, obstructed or taken

away illegally, by a railroad company. *Coates vs. the Clarence Railway Co.*, 1 *Russ. and Mylne*, 181; *Bonaparte vs. Camden and Amboy Railroad Co.*, 1 *Bald. Cir. R.*, 231; *2d Story's Eq. Jur.*, 258, *and Note* 3 *and* 259; *Adams' Eq.*, 485, 486; *Stat. of Min.*, 596, *sec.* 15; *Bedford on Railways*, 474; *Moorhead vs. Little Miama Railway*, 17 *Ohio*, 340.

V.—The complaint on its face states facts sufficient to constitute a cause of action. *Stat. of Min.*, 596, *sec.* 15.

VI.—Respondent submits that when (as in this case) rights of property depend on construction of statutes, the following inflexible rules for construing the same must apply, to wit :

First.—That every Statute derogatory to the rights of property, or that takes away the estate of a citizen ought to be construed strictly. *See Vanhorn's Lessee vs. Dorrance*, 2d *Dall.*, 316; *Paine vs. Ely, et al., Chipman's Reps.*, 14; *Wales vs. Stetson*, 2 *Mass.*, 143; *Canal Co. vs. Railroad Co.*, 4 *Gill and Johns*, 1; 14 *Mass.*, 88.

Second.—Technical rules of construction are not to govern, unless such be the manifest meaning of the Legislature, which meaning is to be gleaned from the Legislative acts, by reference to the subject treated of therein, or to be effected thereby, as well as the language employed in the acts. *See Whiting vs. Whiting* 14th *Mass.* 88; *S. P. Bank of America vs. Fitzsimons*, 3 *Binn.*, 356 ; *State vs. Boyd*, 2d *Gill. & Johns*, 365.

Third.—The Legislature is intended to mean what they have plainly expressed, (as in this case,) and the safe rule is to abide by the words the law maker has used, then there is no room left for construction. *See Fisher vs. Blight*, 2 *Cranch*, *U. S. Reports*, 358; *Canal Co. vs. Railroad Co.*, 4th *Gill & Johns.*, 1 ; *United States vs. Bright et al., Wharton's Digest*, 708.

Berry & Waterman, Counsel for Appellant.

Lyndes & Losey, and E. Fox Cook, Counsel for Resp't.

*By the Court*—Flandrau, J.—The District Courts of this State are courts of general jurisdiction, and may entertain all

cases, jurisdiction over which is not conferred upon some other courts by the constitution or some statute of the State. The case of *Castner & Hinkley vs. Chandler & Green*, 2 *M. R.*, 86, was decided under the Territorial government, and is not authority since the State organization. See *Agin vs. Heyward, ante, p.* 110.

The Defendant by its charter was authorized to "survey, locate, construct, maintain, use and operate, and at their pleasure to alter the line thereof without changing the eastern terminus, a railroad with one or more tracks or lines of rail, from the village of Hokah in the county of Houston and Territory of Minnesota, westwardly by the most feasible and practicable route, to some point between the southern line of this Territory and the point where the township line between township one hundred and ten, and township one hundred and eleven crosses the Minnesota River, thence westwardly by the most direct and practicable route to the great bend of the Missouri River, with the privilege of a branch starting from Hokah and running up the west bank of the Mississippi River by the way of Target Lake to La Crescent in Houston county in the Territory of Minnesota, and also with the privilege of a branch railroad from Hokah, and running by the most direct and feasible route to some point in the village of Brownsville in the county of Houston and Territory of Minnesota, also with the privilege of a branch Railroad with one or more tracks or lines of rail from some point on the main road east of range twelve west of the fifth principal meridian westwardly through the counties of Mower, Freeborn and Faribault to the west line of the Territory." *Sess. Laws of* 1855, *Ch.* 24, *sec.* 2, *as amended by laws of* 1857; *1st Sess. Ch.* 37, *sec.* 1; *2d Sess. Chap.* 65, § 2.

It will be seen that the main line could be altered at the pleasure of the company except the eastern terminus, and was to be built upon the most "feasible and practicable route" between the two first points designated, and by the most " direct and practicable route," thence to the western terminus. That the branch from Hokah to some point in the village of Brownsville was to be upon the most "direct and feasible route." That the branch from some point on the

main road east of range twelve, to the west line of the territory, was only restricted to passing through certain designated counties, which would leave a wide discretion as to the route with the company. The branch from Hokah to La Crescent, however, is directed by the charter to "run up the west bank of the Mississippi River by the way of Target Lake," no discretion being directly conferred upon the company in reference to the route of this branch.

Target Lake lies in a bottom or low area of land between the bluffs and the bank of the river; this whole bottom is subject to overflow at certain seasons of the year, when the lake is lost in the common waters of the river. The eastern extremity of the lake is less than a quarter of a mile from the west bank of the river at low water, and its western extremity less than one mile from such bank. Now there is nothing in the charter that indicates which side of this lake the branch road is to run, whether east or west, except the fact that the west bank of the river is mentioned before the lake in the order of points on the line of the road. The words are "up the west bank of the Mississippi River by the way of Target Lake." If this circumstance should be held to mean that the road should touch the west bank of the River before it reached the Lake it would carry it on the east side of the latter. We do not think such a construction can be insisted upon. These points or monuments are mentioned to control the general direction of the road, and cannot be materially departed from, and must be substantially followed, but who can say exactly how near to Target Lake or the west bank of the river the legislature designed the road should run. The very nature of the objects designated, the one a lake, and the other the ever changing bank of a running river, necessarily permit the exercise of some discretion in the location of the route. It cannot be contended that the bank of the lake was to be touched, any more than that the road should pass through its center; nor can any precise distance be stated from the bank of the river as the course of the road. There must, in all cases of the construction of railroads be a survey made of the route, unless the Legislature should be guilty of the absurdity of indicating an im-

mutable course, to be followed without regard to the topography of the country or the interests of the road and the public.   The object of the survey is to carry out the main idea of the Legislature, consulting, at the same time, the interests of the corporation and the public.   If there is a mountain in the direct road, they may go round it, if tunnelling it would be impracticable, by reason of expense, time, or any of the many circumstances that would influence an engineer in making up his judgment.   If a river intervenes, the best point for a bridge may be sought, always of course observing substantially the true course.   We think all railroad charters that do not directly express the contrary, must be taken to allow the exercise of such a discretion in the location of the route, as is incident to an ordinary practical survey of the same, made with reference to the nature of the country to be passed over, and the obstacles to be encountered or avoided.

The company, in this case, started from Hokah, and passed along the foot of the Mississippi bluffs, running within about three-quarters of a mile of the western extremity of Target Lake, and in the general line of the west bank of the river about one and a-half miles from such bank as it is at low water, and on the bank as it is at high water, to La Crescent. All the land between the road, as located, and the channel of the river, is shown to be subject to annual, and sometimes more frequent inundations; to be of a soft, oozy nature, which would require the road to be bridged the entire length, and that the road is located as near the river as it could be, and avoid these difficulties.   It is our opinion that the corporation did not substantially violate their charter in this respect.   That the evidence shows that the road is on the only practicable bank of the river for railroad purposes, and by the way of Target Lake, within the meaning of the charter.

The judgment of the District Court is reversed, and the complaint of the Plaintiff dismissed.