THOS. McROBERTS

· *vs.*

THE SOUTHERN MINNESOTA RAILROAD COMPANY.

By act of March 2, 1855, and acts amendatory thereof, the Southern Minnesota Railroad Company was authorized to construct and operate, and at its pleasure to alter the line thereof, without changing the eastern terminus, a railroad from Hokah, in Houston county, westwardly, with the privilege of a branch starting from Hokah, and running up the west bank of the Mississippi river, by way of Target Lake to La Crescent, in Houston county, and also to excavate, construct and complete a steamboat canal from the main channel of the Mississippi river through Target Lake, to the most feasible point on Root River, in sec. 28, town 104, range 4, and to remove all obstructions to the free navigation of said river from said point to the village of Hokah, with power to build, construct and operate boats for the conveyance of passengers and freight to and from the eastern terminus of said road. *Held,* that this did not authorize the company to operate boats on the Mississippi to and from a road running to the Mississippi, but that the authority is to operate boats to and from Hokah, via said canal, to the main channel of the Mississippi.

By act of May 22, 1857, said company was authorized to construct a road from La Crescent via Target Lake, up the valley of Root River, and it was also provided that it should have full power and authority to transport persons and property in boats, vessels, barges and other water craft on any navigable river, stream or water which its said road might run to, or connect with, and to collect and receive reasonable compensation for the same; and for that purpose might purchase or hold and own such vessels, boats or other craft as might be requisite for the purpose aforesaid, not interfering with prior ferry rights. *Held,* that it was thereby authorized to transport persons and property on the Mississippi river, from wherever, in following the line pointed out by the aforesaid acts, its road might run to or connect with said river. That, in contemplation of law, a road run-

McRoberts v. The Southern Minnesota Railroad Co.

ning up the west bank of the river to La Crescent, (which is on said bank, in secs. 10 and 11, town 104, range 4), could, within the meaning of said provision, properly be said to run to or connect with said river, not only at La Crescent, but also at any point on said bank within the distance for which it so ran up the bank, i. e., on or along the bank; so that, within such distance, as well as at La Crescent, the company might, at pleasure, (not interfering with prior ferry rights), establish depots and run boats in connection with its road.

In 1858, the legislature granted to McRoberts the exclusive right of ferriage from sec. 24 in said town and range, and within one and one-half miles above and below it. In 1858, the company graded its road-bed for twenty miles from La Crescent, starting in the village and running south-westerly to Root River, keeping on the bank as it is at high water. The appellant's charter (Special Laws of 1864, Ch. 1,) granted to it the rights, franchises and property (including said road-bed,) pertaining to the line of road from La Crescent up the valley of Root River, under the acts above mentioned, including said ferry franchise, on condition that the appellant should construct said road from La Crescent up the Root River valley, "on the present located line thereof, except so far as it may be necessary to change the same for engineering purposes in coming up the valley of Root River." The appellant in 1866, constructed a road diverging from said graded line, so as to run to the river in sec. 24 aforesaid, and runs a ferry boat for the transportation of passengers and freight to and from its terminus in said section, being on the bank as it is at low water. *Held*, that if its road, constructed in accordance with the above mentioned provisions of said act of 1864, would not run where it does thus actually run, the appellant has no right to be there with its road; and its ferry franchise does not enable it to run boats in connection therewith, and that as against respondent it is running said boat within his territory without right, and that if this be so, he has a right of action therefor. *Held*, also, that by its "present located line" is meant that upon which said road-bed was constructed. That, by an "engineering purpose," is meant a purpose of constructing the road on that route in coming up the valley of Root River from La Crescent, on which it can be built, operated and kept in repairs in the best, cheapest and safest manner. That the appellant's charter permits it to deviate from such road-bed to the extent that may be necessary to secure these ends. That the question, whether or not the appellant has a right to be where it is with its road, being a question of fact, upon which the court below did not pass, a new trial is necessary for its decision.

Thomas McRoberts, who sues for himself and his associates, who form an unincorporated association, commonly known as the La Crescent Company, claiming that he and his association own the exclusive right to run a ferry boat across the Mississippi River within certain boundaries, and that the defendant was infringing on such right, brought this action to restrain the defendant, &c. A trial was had before the court, resulting in a finding for the plaintiff. The defendant made a motion for a new trial, which was denied, and it appeals from the order denying the same.

SMITH & GILMAN, for Appellant.

HUGH CAMERON and BRISBIN & PALMER, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The first point made on this appeal, viz.: That the action cannot be maintained because of the want of proper parties plaintiff, as appears from the complaint itself, is not open to the appellant. The objection not having been taken by demurrer or answer, is waived. *Gen. Stat., ch.* 66, 74–78.

The next is, that appellant has a prior and superior right to operate a boat for the transportation of passengers and freight across the Mississippi River at the place, and as it is now doing, of which respondent complains. The place is the west bank of the Mississippi River, at the eastern terminus thereon of appellant's road, in section 24, town 104, range 4, in Houston county, Minnesota; and the court below finds that since the first day of September, 1866, appellant has run a ferry boat for the transportation of passengers and freight to and from said point across the Mississippi River during the season of navigation; and it also finds, that the respondent and his associates are the exclusive owners of the right to run a ferry

McRoberts v. The Southern Minnesota Railroad Co.

boat for the transportation of freight, passengers, live stock and produce across the said river, from any point on sections 2, 3, 11, 12, 13, 14 and 24 in said township and range, and from any point within one and one-half miles above or below said sections, for a period of fifteen years from February 7, 1857; and as a conclusion of law, that appellant has not the right to run a ferry boat for the transportation of freight and passengers across said river from any point in said section 24.

The title of the respondent and his associates is deduced as follows:

By an act of the territory of Minnesota, approved February 7th, 1857, there was granted to said McRoberts, the exclusive right and privilege of keeping and maintaining a ferry across the Mississippi River, at a point near the foot of Mississippi Avenue of the village of La Crescent, for the period of fifteen years, and within the distance of one and one-half miles above and below the centre of said avenue, not to extend, however, beyond the land owned by him and his associates. *Laws of 1857, ch. 71, secs. 1 and 7.*

There was at the time a village called La Crescent on the west bank of the Mississippi River, in sections 10 and 11, and said township and range, which is the La Crescent referred to in said act. It was incorporated as the Town of La Crescent Feb. 27th, 1857. [*Laws of 1857, ch. 16.*]

The appellant was incorporated by act of the territorial legislature approved March 2, 1855, with power to construct and operate, and at its pleasure to alter the line thereof, without changing the eastern terminus, a railroad from Hokah in said county westwardly by the most feasible and practicable route to some point between the south bend of the Minnesota River and the southern line of the territory; thence westwardly by the most direct and practicable route to the great bend of the Missouri River, with the privilege of a branch

starting from Hokah and running up the west bank of the Mississippi River, by way of Target Lake to Eagle Bluffs in Winona county; and also to excavate, construct and complete a steamboat canal from the main channel of the Mississippi River, through Target Lake to the most feasible point on Root River in section 28, said township and range; and to remove all obstructions to the free navigation of said river from said point to the village of Hokah; and said company may build, construct, and operate boats for the conveyance of passengers and freight to and from the eastern terminus of said railroad.

The appellant insists that this authority conferred to operate boats, was not intended to be dependent upon the construction of the canal, nor upon the running of such boats necessarily to and from Hokah, but only so as to form a connection with the railroad; that this act gives the company authority to construct its road to the Mississippi, and that the evident intention was to give authority to operate boats on the Mississippi to and from the road, with the privilege of constructing a canal and improving Root River, so as to run boats up to Hokah, if desirable. This, we think, is an entire misconstruction of the provision in question. In giving the company authority to operate boats to and from said "eastern terminus," the legislature has no reference whatever to Eagle Bluffs, to which the company may build a branch. Hokah is intended, as plainly as if that word was used, instead of " eastern terminus."

If, as appellant contends, it could dispense with the construction of a canal and improvement at Root River, and use its road between Hokah and the Mississippi for the transportation of passengers and freight, and own boats on the Mississippi in connection therewith, it could do the very thing it was forbidden to do, viz.: change the eastern terminus of its road.

But by act of congress of March 3d, 1857, lands were granted to the territory of Minnesota to aid in the construction of a railroad from La Crescent via Target Lake up the valley of Root River.

By act of the territory, approved May 23d, 1857, [extra session of 1857, ch. 65, sec. 2,] the charter of the appellant was amended by striking out · "Eagle Bluffs, in Winona county," and inserting "La Crescent, in Houston county."

By act of the territory, approved May 22d, 1857, [extra session laws of 1857,] disposing of said land grant, the company is authorized to construct a road from La Crescent via Target Lake up the valley of Root River. By ch. 3, sec. 10 (extra Sess L. 1857, p. 22,) of said act, it is provided, that said company shall have " full power and authority to transport persons and property in boats, vessels, barges, and other water crafts, on any navigable river, stream or water, which its said road may run to, or connect with, and to collect and receive reasonable compensation for the same, and for that purpose may purchase or hold and own such vessels, boats or other craft as may be required for the purpose aforesaid; *Provided, however,* the provisions of this section shall not interfere with, or apply to the ferry rights, privileges, or franchises heretofore granted by the legislature of the territory."

This language is vague in its generality of expression. It is to receive a rational construction, however, and will not bear that which the appellant would put upon it, viz.: that it confers the right to transport persons and property by boat upon the river without any connection with the road, the only consideration of the exercise of this right being that the road run to or connect with the river.

On this construction the appellant, upon constructing its road to the river, say at La Crescent, might engage in the carriage of persons and property for hire from Winona to St. Paul,

or establish ferries at as many points not already occupied on the river as it saw fit.

We do not think that this is what the legislature meant. The river is a natural, the railway an artificial road or medium of transportation, and the law authorizes the appellant to use any such natural way to which its artificial way may run, or with which it may connect itself, to carry persons and property from where it so runs to or connects therewith to any other point on the river, not infringing on prior ferry rights; not, however, from wherever the appellant might see fit to connect its road with such river, but from wherever, in following the line pointed out in its charter, the road would or might run to or connect with such river; where, in short, the legislature contemplated that it might.

In my opinion, the legislature contemplated that this road might run to or connect with the Mississippi at La Crescent.

The majority of the court, however, are of opinion, that in contemplation of law, a road running " up the west bank of the Mississippi to La Crescent," could also properly be said to run to or connect with the river at any point on said bank within the distance for which it so ran up the bank, i. e., on or along the bank within the meaning of section ten aforesaid, so that within such distance, as well as at La Crescent, the appellant might at pleasure establish depots, and run boats in connection with the road, not infringing McRobert's ferry rights.

Taking this to be the correct interpretation of these acts, it is quite plain, from the map, that a road from Hokah up the west bank of the Mississippi to La Crescent, *might* thereunder lawfully have run upon such bank through section 24 aforesaid. In so doing it would be on the bank as it is at low water. *S. M. R. R. Co. vs. Stoddard, 6 Minn.* 150.

It follows from what has been said, also, that it might under

said acts have lawfully run a ferry boat therefrom in connection therewith.

In this state of things, by act of July 23d, 1858, (*Special Laws* 1858, *ch.* 104,) McRoberts' charter was so amended as, in terms, to give him (except as against the Winona and La Crosse R. R. Co.) the exclusive right of ferriage within the distance of one and one-half miles above and below said Mississippi Avenue, or any point on sections 2, 3, 11, 12, 14 and 24, in said township and range, which, however, could not deprive the appellant of its prior vested right aforesaid.

The appellant accepted said act of May 22d, 1857; and in July, 1857, a survey was made and map filed in the general land office, of the line, as located from La Crescent to Rochester, starting on said bank in La Crescent, and running down said bank to within about six hundred feet of the present terminus, whence, leaving the river, it runs southwesterly, striking the Root River in section 28.

The construction of the road was commenced in 1858, and the route was changed to some extent. The road-bed *as built* started in the village of La Crescent, and ran in a generally southwest direction to Root River, keeping on the bank of the Mississippi River as it is at high water. (6 *Minn.* 150.) Some twenty miles were graded in 1858, from La Crescent to Houston; this is known as the Chamberlain grade.

The state having foreclosed its mortgage upon the franchises and other property of the corporation, by ch. 1 of the special laws of 1864, (approved March 4, 1864,) granted such as pertained to the line of road from La Crescent up the valley of the Root River to Rochester, and the line of road and branches prescribed in the act of incorporation of March 2d, 1855, and the several acts amendatory thereof, to the appellant, subject to the conditions and provisions hereinafter specified. The line of road and franchises thereto pertaining, afterwards

known as the Minnesota Valley Railroad, were reserved from this grant, and afterwards granted to others.

This is the appellant's charter, and it granted to it, among other franchises, the ferry franchise above described.

This, however, (like the rest), is granted upon this express condition "that the said Southern Minnesota Railroad Company shall build and construct ten miles of said road within two years from the 20th day of January, 1864, and thirty miles of said road within three years from said 20th day of January, 1864, and fully build, construct and complete, and fully equip said road from La Crescent up the Root River valley, via Chatfield, to a junction with the Winona and St. Peter Railroad at Rochester, on the present located line thereof, except so far as may be necessary to change the same for engineering purposes, in coming up the valley of Root River." (*Sec. 7.*)

If now, before the construction of any portion of said road, the appellant had commenced to run its ferry boat from where it now does, it would do so without right, since its franchise is to run in connection with its railroad running upon or along said west bank. And as McRoberts has the exclusive right of ferriage there, except as against those who have a prior right, such an unauthorized proceeding would be an infringement of *his* ferry franchise, for which an action would lie for him against appellant, who would be a mere trespasser upon him.

It is just as clear, that, if the appellant should build its road on a certain part of the west bank of the river, while its charter restricted it to a certain other part, and should run its ferry in connection therewith, such an attempted exercise of its ferry franchise would be equally without right. For, though such franchise is to run boats in connection with its railroad running along or upon said bank, it is only in connection with a road *lawfully* running thereon, i. e., where the

legislature contemplated that it *might run*, that such franchise can exist.

Such an unauthorized proceeding would be, equally with the one first above mentioned, an infringement of McRoberts' ferry franchise, for which he would have an action.  *Hud. & Del. Canal Co. vs. N. Y. & Erie R. R. Co.*, 9, *Paige*, 323.

Now, the appellant's right to construct and operate a railroad at all under said acts, is upon the express condition, that it shall build and construct ten miles of said road within two years from January 20th, 1864, and thirty miles within three years, and build, complete and equip said road from La Crescent up the Root River valley, &c., on its present located line, except so far as it may be necessary to change the same for engineering purposes, in coming up the valley of Root River. And this ferry franchise being, also, like all the other franchises, granted upon the same conditions, enables appellant to run boats in connection with such road from said bank of said river only so far as said road, so constructed, would run upon or along such bank.

It follows, that if said road, so constructed, would *not* run where the appellant's road does actually run, that the appellant has no right to be there with its road, and that its ferry franchise does not enable it to run its boat in connection therewith, and that as against McRoberts, it is running such boat within his territory without right, and if this be so, that he has his action therefor.

It is obvious, from this view of the case, that the district court erred in its conclusion of law, that McRoberts had no right to question the location of defendant's railroad.

It is also obvious, that having such right, the question whether the appellant has a right to be where it is with its road, is a question of fact, to answer which it must be settled :

1st.   Where might the appellant have gone with its road? And 2d.   Is it there?

It might have gone, of course, in fact, it was bound to go, upon "*its present located line*," within the meaning of said act, changed so far as might be necessary for engineering purposes in coming up Root River valley; but where that line in point of fact would be, is, of course, a question of fact, as well as the question whether the appellant be there with its road or not; questions upon which the court below did not find, and upon which, in its view of the law it was not important for it to find, answers to which, however, in the view above stated, are necessary to any decision of the case, and for this purpose there must be a new trial.

It is suggested by the respondent's counsel, that, whereas, the appellant's ferry franchise is to carry freight and passengers in connection with its road, the proof shows that the appellant carries miscellaneously from the neighborhood, and that this sustains the court below, and the injunction.

But the court below finds that the appellant runs its boat for the transportation of passengers and freight to and from the eastern terminus of its road, and the injunction ordered is general, viz.: to restrain the appellant from running the ferry boat.   Such proof, if it existed, would not sustain such an injunction.   And this court would scarcely be expected to affirm the injunction in part, i. e., as to carrying miscellaneously from the neighborhood, no such fact being found by the court below, and the settled case not only not purporting to contain all the evidence, but showing, on the evidence actually reported, that while there was evidence tending to prove that persons living in the vicinity of the depot were in the habit of crossing on foot, there was evidence for appellant, that the boat was not run for ferry purposes generally, but only in connection with its road.

McRoberts v. The Southern Minnesota Railroad Co.

It may, however, be proper to add, that we have no doubt whatever upon the evidence, nor do we understand it to be disputed, that by the " present located line" the legislature referred to the Chamberlain grade, and not to the survey filed in 1857, in the general land office.

In the case of Stoddard vs. S. M. R. R. Co., 6 Minn. 150, above referred to, the corporation stood upon the Chamberlain grade as a road constructed in conformity to the requirements of the act, on March 2, 1855, before mentioned, which directed it " to run up the west bank of the Mississippi River by the way of Target Lake." In the language of the opinion in that case, the company " started from Hokah, and passed along the foot of the Mississippi bluffs, running within about three-quarters of a mile of the western extremity of Target Lake, and in the general line of the west bank of the river, about one and a half miles from such bank as it is at low water, and on the bank as it is at high water, to La Crescent ;" and the court held that the road was located as near the river as it could be and avoid the difficulties specified in the opinion, and that it did not violate said provision of said act of March 2, 1855.

This road-bed, thus built from La Crescent to Houston, was, as appears from the undisputed testimony in the case, the only road-bed there was on the line from La Crescent to Rochester when the act of 1864 was passed.

It must, therefore, be the one referred to in said act, in the provision above mentioned, that the rights, privileges, franchises, *road-bed*, right of way, &c., theretofore granted, are granted upon the express condition aforesaid that said company shall build " *said road from La Crescent*;" as above recited, upon *its* " *present located line* ;" (sec. 7) and (sec. 4) that the company shall not acquire the title to the " *road-beds*, right of way, depot ground, culverts, bridges, turn-outs, switches, rights, privileges and

franchises, and *the track* and *line* of the said Southern Minnesota Railroad Company, until said company shall fully *complete* and put *in running order* ten miles of said railroad; but said * * * corporation, may have the privilege of entering into and upon said railroad track, right of way and depot grounds, for the purpose of constructing said railroad," which makes it, perfectly plain, as before remarked, that the Chamberlain grade was the " located line" to which the appellant was bound to adhere, except so far as it might be necessary to change it for engineering purpose in coming up the valley of the Root River.

The appellant's road as constructed diverges from this grade in section 27, and runs in a northeasterly direction therefrom, between Target Lake and the river, to its present terminus on section 24, aforesaid, about two and one-half miles south of the terminus of the Chamberlain grade in the Village of La Crescent, in sections 10 and 11, following in effect the direction which the plaintiff in the case above cited contended it was bound to take under its then charter.

This, the appellant contends, was a deviation necessarily made for engineering purposes in coming up the valley of the Root River, within section 7, aforesaid.

The respondent denies it, and this, so far as we see, is the main issue of fact to be returned upon a new trial; but we may add, that it would seem that as to what would be an engineering purpose in the abstract, within said act, there can be but little difference of opinion.

In our judgment it can only mean a purpose of constructing the road on that route in coming up the valley of Root River from La Crescent on which it can be built, operated or kept in repair, in the best, cheapest and safest manner.

So far as it may be necessary to deviate from said Cham-

berlain grade, in order to secure this, so far the appellant's charter permits such deviation.

Order denying new trial reversed.