Rufus J. Baldwin and another *vs.* Thomas H. Canfield.

## May 15, 1879.

Corporation—Directors can act only as a Board.—By the articles of incorporation of the Minneapolis Agricultural & Mechanical Association, (a corporation formed under the general laws of this state,) the government of the association and the management of its affairs is vested in the board of directors. The legal effect of this is to invest the directors with such government and management, as a board, and not otherwise. The general rule is, that the governing body, as such, of a corporation, are agents of the corporation only as a board, and not individually. They have no authority to act for the corporation, save when assembled at the board meeting. The separate action, individually, of the persons composing such governing body, is not the action of the constituted body clothed with the corporate powers.

Same—Deed of Land signed by Directors.—Application of this rule to the facts of this case, in which a deed of real estate belonging to the association before mentioned, executed in the name of such association by all the directors acting separately and not as a board, and without any authority from the board of directors, is held void as a conveyance, and equally ineffectual as a contract to convey.

Same—Transfer of Stock.—Gen. St. *c.* 34, § 49, enacts that the stock of corporations like the association aforesaid shall be transferable only on the books of such corporation, in such form as the directors prescribe. Provisions of this kind are intended solely for the protection and benefit of the corporation. They do not incapacitate a shareholder from transferring his stock, without any entry upon the corporation books. Except as against the corporation, the owner and holder of shares of stock may, as an incident of his right of property, transfer the same as any other personal property of which he is owner.

Same—Action by Stockholder to remove Cloud on Title.—Holders of the stock of a corporation, whether holding as general owners or as pledgees, are interested in the preservation of the corporate property, and in preventing it from passing out of the hands of the corporation. They have, therefore, a right to take legal means to preserve the corporate property, and to prevent it from being lost to the corporation, or its value from being impaired. If such value is practically impaired by a cloud upon the title of the corporation to real property, they have a right to have the cloud removed.

Same—Deed before mentioned held to cloud Title.—The deed before mentioned purports upon its face to be the deed of the association aforesaid. Although it is not its deed, that fact is not apparent upon its face, but the deed is upon its face regular and valid. Whether it is so

in fact and law, depends upon the extrinsic consideration, whether its execution was authorized by the board of directors. It therefore throws a cloud upon the title of the association.

**Same—Deed by owner of all of the Stock.**—While the title to certain real property was in said association, one K., who owned all the stock of the association, executed in his own name a deed of said property. As respects the title of the association to said property, this deed is void upon its face, and is, therefore, not a cloud upon such title.

**Objection for want of Parties.**—A defect of parties must be taken advantage of by answer or demurrer; otherwise it is waived.

**Parties to Suits in Equity.**—The question of who shall be made parties to a proceeding in equity, is a question of convenience and discretion, rather than of absolute right, and a question to be determined according to the exigencies of the particular case. Application of this rule to the facts of this case.

**Rights of Pledgee of Stock.**—A person holding stock of a corporation, not as a stockholder, but merely as a pledgee, may bring an action on his own account, and in his own name, to protect his rights and interests as a pledgee, and is not required in such matter to act through the association.

**National Bank—Loan on Stock of Corporation owning only Real Estate.**—The taking, by a national bank, of the stock of a corporation as collateral security for a loan of money, is not a violation of that provision of the national banking act, making it incompetent for a national bank to loan money upon a mortgage of real estate, although the property of such association consist wholly in real estate.

**Estoppel.**—The defendant's claim of estoppel considered, and *held* not to be sustained by the facts of the case.

The plaintiffs Baldwin and the State National Bank of Minneapolis brought this action in the district court for Hennepin county against the defendants Thomas H. Canfield, William S. King, and the Minneapolis Agricultural and Mechanical Association praying that a certain deed from King to Canfield, and a certain instrument purporting to be a deed from the Agricultural and Mechanical Association to Canfield, (each of which purported to convey certain real estate of the association,) might be cancelled, and for other relief. The defendant Canfield was alone served with process, and answered. The action was tried before *Wilkin*, J., acting for one of the judges of the fourth district, whose findings of fact and conclusions of law are fully stated in the first of the

three following opinions. The plaintiffs, without notice to defendant Canfield, caused judgment to be entered in conformity with the decision, except that it omitted to declare the interest of Canfield as set forth in the seventh conclusion of law, which is recited in the opinion. The defendant Canfield appeals from the judgment and from the order denying a new trial.

*E. C. Palmer*, for appellant.

*George Bradley*, for respondents.

BERRY, J.* The court by which this case was tried below finds the following facts:

The State National Bank of Minneapolis is, and for more than six years prior to the commencement of this action was, a corporation created and organized under the laws of the United States as a national bank, located at Minneapolis. The Minneapolis Agricultural and Mechanical Association, in June, 1871, became a body corporate, duly created and organized under the general laws of this state, and, as prescribed in its articles of incorporation, the general nature of its business was the promotion of the agricultural and mechanical arts, and the holding of fairs and other public exhibitions. The capital stock authorized by its articles was $40,000, divided into 800 shares of fifty dollars each. All these shares were issued, distributed and paid up, and certificates given for the same. The original corporators were, W. P. Westfall, C. G. Goodrich, Levi Butler, W. W. Eastman, Geo. A. Brackett, D. Morrison, W. D. Washburn, R. J. Mendenhall, Thomas Lowry and W. S. King. The articles of incorporation provided that the government of the association and the management of its affairs should be vested in a board of eleven directors, to be annually elected by the stockholders, and to continue for one year, and until their successors were elected and qualified. The articles also provided that the persons above named should constitute the first

* Cornell, J., having been of counsel, did not sit in this case.

board of directors, and continue such until the first election by the stockholders, and until their successors should be elected and qualified, and that there should be annually elected by said board, from its members, a president, vice-president, treasurer and secretary, for one year.

After this organization, George F. Stevens became a member and stockholder of the corporation. The original corporators and Stevens were by the stockholders elected the first board of directors, and this board elected the officers before mentioned. Shortly afterwards said corporation purchased and acquired title in fee to seventy acres of land, situate in the county of Hennepin, of the value of $70,000. Upon this land the corporation erected buildings and other structures, worth over $3,000, for the purpose of accommodating fairs, which it proposed to hold, and for the other uses and purposes contemplated in its creation. Since the first election of the first board of directors, and the first election of officers, there has been no election of officers or directors. Meetings of the board of directors were held from time to time until July 23, 1872, but there has been no meeting of stockholders or directors, nor of any persons claiming or assuming to act as directors or officers of said association, since that date. A fair was held under the auspices of the association in the fall of 1871, upon the lands purchased as aforesaid, but none has been held by it since that time. The association never adopted any by-laws or common seal. On November 12, 1872, Wm. S. King had acquired title to all the stock of the association, so that on that day he was the absolute owner of all the capital stock of the association, and the only stockholder. Subsequently, and before the agreement with defendant Canfield hereinafter set forth, King sold most of the buildings and structures which had been erected on the lands aforesaid, to the Minneapolis Harvester Works Company, and took possession of said lands, and used them as his own private property, without any interference of said corpo-

ration or its officers; and ever since said last-mentioned date, the ordinary and lawful business of said association has been wholly suspended and abandoned.

On November 5, 1872, King, for a valuable consideration, executed and delivered to George A. Brackett his three promissory notes for $14,000, payable to Brackett's order, with ten per cent. interest, and, as security for the payment of the same, delivered to Brackett, in pledge, two hundred shares of the capital stock of said association. Afterwards, on April 8, 1873, the State National Bank of Minneapolis lent to Brackett $10,000, and, to secure the payment of the loan, Brackett executed and delivered to the bank his note for $10,000, payable in three months, and, as security for its payment, he endorsed and delivered to the bank the three promissory notes given to him by King, together with the two hundred shares of stock pledged as aforesaid. On November 12, 1872, King, for a valuable consideration, executed and delivered to R. J. Mendenhall his five promissory notes for $6,250, payable in one year, with twelve per cent. interest, and, as security for the payment of the notes, he delivered to Mendenhall, in pledge, one hundred shares of the stock of said association. Subsequently, and before the maturity thereof, the five notes, together with the stock pledged for the security of the same, were, for a valuable consideration—to wit, the discount of the notes by the bank—duly endorsed, transferred and delivered to the bank by Mendenhall, and the bank has ever since held, and now holds, the notes and stock, and no part of the notes has been paid.

On July 19, 1873, R. J. Baldwin, then and ever since cashier of said bank, transferred to King two hundred shares of the stock of the Minneapolis Gaslight Company, of the value of $10,000, for the purpose of enabling King, by the use and pledge thereof, to raise $10,000 for his own benefit; and in consideration thereof, and as security for the return of the gas stock, King delivered to Baldwin five hundred shares of the stock of the association before mentioned. King

then and there stated to Baldwin that he (King) had bought all the stock of the association; that said stock represented the lands aforesaid (which were known as the fair grounds;) that he owned the whole of said lands, and wished him (Baldwin) to have the whole of the stock, so that he could control it. At the time of receiving the loan of gas stock, King knew that the bank held the three hundred shares of stock (pledged to it as aforesaid) as security for the notes for which the same had been pledged. King, by means of the gas stock lent him, effected a loan of $10,000 for his own benefit at the Second National Bank of St. Paul. The gas stock has never been returned to Baldwin, but is still held by said Second National Bank.

On August 14, 1873, King and Canfield mutually made, executed and delivered an instrument in writing, which, so far as important here, is in these terms, viz.: "I will sell to Thomas H. Canfield the property known as the Fair Grounds, in Minneapolis, (excepting five acres subscribed to the stock of the Minneapolis Harvester Company,) for the sum of $65,-000 of the 7-30 gold bonds of the Northern Pacific Railroad Company, at the rate of ninety cents on the dollar, and the balance in the notes of hand of said Canfield, payable in equal instalments, one, two and three years from date, with interest at the rate of ten per cent. per annum.   *   *   *   * I am to procure abstracts of title, complete and perfect the same, and execute a warranty deed at as early a day as possible; all buildings and other materials to go with the land, except the buildings sold to the Harvester company.

"August 14, 1873.

(Signed)                  "WM. S. KING."

"I accept the above proposition, and will pay as provided in the foregoing agreement, when proper deed is delivered.

"August 14, 1873.

(Signed)                  "THOS. H. CANFIELD."

At the time of making this agreement, Canfield knew that the "fair grounds" had been owned by the association before

mentioned. He was then informed by King that he (King) owned all the stock of said association, and it was then and there verbally agreed between King and Canfield that King would transfer said stock to Canfield, and also get a deed of said property from the association to Canfield, "upon the consummation of said written agreement." At the time of executing the agreement of August 14, 1873, Canfield did not know that the plaintiffs (the bank and Baldwin) held said stock, or any part thereof, as security as aforesaid, or had any claim thereon, and did not know of any claim thereon, or right thereto, in any person except King, until informed by King as hereinafter stated; but supposed that King held and controlled the same.

On August 21, 1873, King informed Baldwin of his agreement to sell the "fair ground property" to Canfield for Northern Pacific Railroad bonds and other considerations, and thereupon it was on that day agreed between King and Baldwin, acting for himself and the plaintiff bank, that the plaintiffs should take $36,000 par value of said Northern Pacific Railroad bonds, to be paid to King by Canfield as aforesaid for the "fair grounds," in exchange for said eight hundred shares of stock of the association aforesaid, and that said stock should be sent to the Park Bank, in the city of New York, there to be delivered to Canfield, upon his delivering at said bank, to the order of Baldwin, said thirty-six thousand dollars (par value) of bonds of the Northern Pacific Railroad Company. A computation was then and there made by King and Baldwin of the amount due the plaintiffs upon the notes before mentioned, and the gas stock transaction. This amount was found to be $32,041.60, and the value of the bonds was estimated at ninety cents on the dollar. It was then and there further agreed between King and Baldwin, that upon receipt of the bonds from Canfield by Baldwin, he should immediately sell the same in market; should retain $32,041.60 out of the proceeds, paying the balance thereof to King; and that out of the amount retained,

4

he should pay the claim of the Second National Bank of St. Paul, and redeem the pledged gas stock. In pursuance of this agreement, King thereupon executed and delivered to Baldwin an order upon Canfield, as follows:

"MINNEAPOLIS, Minn., August 21, 1873.

"*Hon. Thomas H. Canfield:*

"DEAR SIR,—I herewith hand you certificates for eight hundred shares of stock in the Minneapolis Agricultural and Mechanical Association. You will please deliver to the order of R. J. Baldwin, cashier, certain bonds of the Northern Pacific Railroad Company, to the amount of thirty-six thousand dollars (par value,) and this shall be your receipt therefor.

(Signed)                                    "WM. S. KING."

Beneath this order Baldwin wrote another order, in these words:

"*Hon. Thomas H. Canfield:*

"Please deliver the above-described bonds to the National Park Bank, New York.

"Minneapolis, Minn., August 22, 1873.

(Signed)                    "R. J. BALDWIN, Cashier."

On August 22, 1873, Baldwin sent the certificates of the eight hundred shares of stock, together with the two orders above, to the Park Bank, with written instructions to deliver the certificates to Canfield, upon receiving from him said thirty-six thousand dollars of bonds, properly transferred so that they could be sold, and, upon receipt of the bonds, to sell the same, and credit the proceeds to the account of the plaintiff.

After the agreement of August 14, 1873, between King and Canfield, King, in pursuance thereof and in order to carry it out, caused a deed to be executed by the several persons heretofore named as the directors of said association. This deed, which is in form one of bargain and sale without covenants, purports to be a conveyance of the fair ground

property by the Minneapolis Agricultural and Mechanical Association to Thomas H. Canfield, and is signed as follows, viz.:

"THE MINNEAPOLIS AGRICULTURAL AND

"MECHANICAL ASSOCIATION. [SEAL.]

"By R. J. Mendenhall, Thomas Lowry, W. D. Washburn, C. G. Goodrich, G. F. Stevens, Wm. S. King, Levi Butler, W. W. Eastman, W. P. Westfall, Dorilus Morrison, Geo. A. Brackett, directors of said corporation."

The execution of this deed was never authorized or directed at or by any meeting of said directors of said association, nor was any resolution ever passed by said board of directors in reference to the execution of said deed by said last-named parties, or any of them, or authorizing the seal of said corporation to be attached to any such deed, or authorizing the sale or conveyance of said property in any way to said Canfield. The deed was executed by the parties above named separately and at different times, wherever they happened to be, at the request of King or his attorney, for the purpose of enabling King to convey said property to Canfield. The deed was executed by Stevens at Utica, in the state of New York, by Morrison and Brackett in the city of New York, and by the other signers thereof in Hennepin county.

At the time of the execution of the deed by Brackett and Morrison, Canfield was informed by King that stock of the association had been left as collateral, to secure certain notes at the State National Bank of Minneapolis, and that the same had been sent to the Park Bank, of New York, to be taken up by King with the Northern Pacific Railroad bonds to be received by him under the agreement of August 14, 1873.

On September 12, 1873, at the city of New York, King delivered to Canfield said deed, together with a warranty deed of the same property duly executed and acknowledged by him (King,) and also an abstract of title to said property. The warranty deed contains the statement that it "is in-

tended to accompany and guaranty the title conveyed in" the deed first mentioned above, and not "to grant a title adverse to the title conveyed in" the same. At the same time and place, Canfield delivered to King the sixty-five thousand dollars of bonds mentioned in the agreement of August 14, 1873, and also executed and delivered to him his (Canfield's) notes for sixty-five hundred dollars, as by said agreement required. Both deeds were duly recorded on October 4, 1873. The orders hereinbefore mentioned, directed to Canfield and signed by King and Baldwin, were never presented to Canfield. No bonds of the Northern Pacific Railroad Company were ever deposited at the Park Bank to the credit of the plaintiffs or either of them, under the agreement between King and Baldwin hereinbefore set forth or otherwise. No portion of the stock of the association was ever delivered by plaintiffs to Canfield or King, but the same has ever since been and still is held by the plaintiffs as collateral security for the payment of the notes before mentioned, and for the return of the gas stock.

The notes transferred by Mendenhall to the bank were duly endorsed by him, and a waiver of protest duly endorsed thereon; and when the same became due, Mendenhall was not able to pay them, but was insolvent. The notes transferred to the bank by Brackett were duly endorsed by him, but have never been protested for non-payment. Brackett, when the note given by him to the bank became due, and when the notes from King to him became due, was and ever since has been able to pay his said ten thousand dollar note. No part of any of said notes has been paid, and no legal proceedings have been taken by plaintiffs for their collection; no part of the gas stock has ever been returned, but the same remains in the possession of the Second National Bank of St. Paul. None of the bonds or notes received as aforesaid by King from Canfield have ever been delivered to or received by the Minneapolis Agricultural and Mechanical Association, but the same were retained by King for his own use. Canfield,

through inadvertence, did not demand the delivery of the stock of the association from King at the time of the delivery of the deeds by the latter and of the bonds and notes by himself, supposing that the two deeds conveyed a complete title to the property described therein. The association has never owned any other property except said real estate—that is, the fair ground property and the buildings thereon. Shortly after receiving the deeds from King, Canfield conveyed to the Minneapolis Harvester Works the five acres excepted by the terms of the agreement of August 14, 1873, and took possession of the fair ground property, (except said five acres,) and of the buildings remaining thereon, and has ever since remained in possession thereof. No proof was produced upon the trial as to the pecuniary responsibility of King.

As conclusions of law, the court below finds as follows:

*First.*—The purchase of all the stock of the Minneapolis Agricultural and Mechanical Association by King did not work a dissolution of the corporation.

*Second.*—At the time of the conveyance by him to Canfield, King had not the legal title to the real estate purporting to be conveyed thereby, and he has never acquired the legal title thereto.

*Third.*—At the time of the execution of the deed purporting to be executed by the association mentioned, the legal title to the real estate attempted to be thereby conveyed was in the Minneapolis Agricultural and Mechanical Association.

*Fourth.*—Said deed was not the act and deed of said association, and did not convey to Canfield the legal title of the real estate purporting to be conveyed thereby.

*Fifth.*—The plaintiffs are *bona-fide* holders of said eight hundred shares of the stock of said association, as collateral security for the payment of the notes mentioned, and for the return of the gas stock.

*Sixth.*—By reason of so holding said stock, plaintiffs have a valuable interest in the real estate mentioned, which interest is prior to any claim of King or Canfield in the same.

*Seventh.*—Canfield is in equity the owner of said eight hundred shares of stock, subject to the right and interest of the plaintiffs therein as found above.

*Eighth.*—The deed from King to Canfield, and the deed purporting to be executed to Canfield by the association, are a cloud upon the title of such association to said real estate.

*Ninth.*—Said two deeds are void and of no effect as against the plaintiffs, who are entitled to judgment against King and Canfield, declaring the same and the record thereof void as against plaintiffs, and directing said judgment to be recorded in the registry of deeds for Hennepin county.

This action was brought by Baldwin and the State National Bank of Minneapolis, as plaintiffs, against the Minneapolis Agricultural and Mechanical Association, and King and Canfield, as defendants.  Canfield appeared and answered.  Neither of the other defendants was served with process or appeared in the action.

The first, second and third of these conclusions of law are obviously right, and require no comment.

The fourth conclusion is called in question by the counsel for defendant Canfield, but we have no doubt of its correctness.  As we have already seen, the court below finds that, by its articles of incorporation, the government of the Minneapolis Agricultural and Mechanical Association, and the management of its affairs, was vested in the board of directors.  The legal effect of this was to invest the directors with such government and management *as a board*, and not otherwise.  This is in accordance with the general rule that the governing body of a corporation, as such, are agents of the corporation only as a board, and not individually.  Hence it follows that they have no authority to act, save when assembled at a board meeting.  The separate action, individually, of the persons composing such governing body, is not the action of the constituted body of men clothed with corporate powers.  Angell & Ames on Corporations, § 504, *et seq.*; *In re Marseilles Extension Ry. Co.*, Law Rep. 7 Ch. Ap. 161; *D'Arcy* v. *Tamar*,

*etc., Ry. Co.,* L.w Rep. 2 Exch. 158; *Schumm* v. *Seymour,* 24 N. J. Eq. 143; *First Nat. Bank* v. *Christopher,* 40 N. J. Law, (11 Vroom,) 435; *Junction R. Co.* v. *Reeve,* 15 Ind. 237; *Cammeyer* v. *United German Churches,* 2 Sandf. Ch. 186; *Yellow Jacket Silver Mining Co.* v. *Stevenson,* 5 Nev. 224; *Hillyer* v. *Overman Silver Mining Co.,* 6 Nev. 51; *Stoystown, etc., Turnpike Road Co.* v. *Craver,* 45 Pa. St. 386; *Edgerly* v. *Emerson,* 23 N. H. (3 Foster,) 555. In Vermont a somewhat different rule is allowed, as in the *Bank of Middlebury* v. *Rutland & Washington R. Co.,* 30 Vt. 159. In that case, and perhaps others in that state, it is held that directors may bind their corporation by acting separately, if this is their usual practice in transacting the corporate business. But we think that the general rule before mentioned is the more rational one, and it is supported by the great weight of authority. From the application of this rule to the facts of this case, it follows that the fourth conclusion of law, viz., that the deed purporting to be made by the association was not the act and deed of such association, and therefore did not convey the title to the premises in question to Canfield, is correct. The directors took no action as a board with reference to the sale of the premises or the execution of any deed thereof. So far as in any way binding the corporation is concerned, their action in executing the deed was a nullity. They could not bind it by their separate and individual action. Hence it follows that the so-called deed is not only ineffectual as a conveyance of real property, but equally so as a contract to convey.

The correctness of the fifth conclusion of law is denied, upon the ground that there was no proper transfer of the stock to plaintiffs, such as is provided for in Gen. St. *c.* 34, § 49. This section enacts that the stock of corporations like the association aforesaid, shall be transferable only on the books of such corporation, in such form as the directors prescribe. Provisions of this kind are intended solely for the protection and benefit of the corporation; they do not in-

capacitate a shareholder from transferring his stock without any entry upon the corporation books. *McNeil* v. *Tenth National Bank,* 46 N. Y. 325; *Grymes* v. *Hone,* 49 N. Y. 17; Field on Corporations, §§ 110, 111. Except as against the corporation, the owner and holder of shares of stock may, as an incident of his right of property, transfer the same as any other personal property of which he is owner. It appearing in this case that the certificates of stock (the evidence of title to the same) were delivered to the plaintiffs in pledge and as security for the payment of the notes and the return of the gas stock loaned, the court below was right in finding the plaintiffs to be *bona-fide* holders of the shares represented by said certificates, as collateral security.

The sixth conclusion of law is, that "by reason of so holding said stock as collateral security as aforesaid, the plaintiffs have a valuable interest in said real estate, which said interest is prior to any claim to or interest in said real estate of defendants King and Canfield." It will be remembered that the court finds that the said association has never owned any other property except said real estate. The stock represents the corporate property. Its value depends upon the value of the corporate property. The holders of the stock, whether holding as general owners or as pledgees, are therefore interested in the preservation of the corporate property, and in preventing it from passing out of the hands of the corporation. Stockholders do not have an "interest" in the corporate real estate, in the sense in which the word "interest" is commonly used in that connection, for such real estate is the property of the corporation. For this reason we think that the court below has used the word "interest" in this finding inaccurately. But this is not important. Upon the facts found, and the preceding conclusions of law, the plaintiffs, as holders of the stock, are interested in the preservation of the corporate property, and in preventing it from passing out of the hands of the corporation. If this is so, they have a right to take legal means to preserve the property, to prevent it

from being lost to the corporation, or its value from being impaired. If such value is practically impaired by a cloud upon the title of the corporation to real property, they have a right to have the cloud removed. Their ownership of the stock, either general or special, gives them a right to defend it, as in case of any other property. This right is paramount to any right upon the part of King as general owner of the stock, or of Canfield as equitable owner of it, for the reason that, by the contract of pledge, King has subordinated his rights to theirs, while Canfield's right to the stock accrued while the stock was in the plaintiffs' hands—while they were holding the certificates which are the evidence of its ownership. The certificates were not delivered to Canfield. This fact bound him to take notice of the rights of the plaintiffs as holders of them in pledge.

With that part of the seventh finding which holds that upon the facts in the case, Canfield is in equity the owner of the stock of the association, no fault is found as far as it goes. The remainder of this finding—that such Canfield's ownership is subject to the rights of the plaintiffs therein and thereto—follows from what we have said above.

The ninth finding—to wit, that the two deeds, one purporting to run from the association to Canfield, the other from King to Canfield, are void and of no effect as against the plaintiffs —calls for no remarks beyond what have been already made.

The eighth finding is that the two deeds mentioned are a cloud upon the title of the Minneapolis Agricultural and Mechanical Association to the real estate aforesaid. As respects the deed purporting to run from the association to Canfield, this finding is correct. That deed purports on the face of it to be the deed of the association, and although, for reasons before assigned, it is not the deed of the association, that fact is not apparent upon its face. On the contrary, the deed is, upon its face, regular and valid, and whether it is so in fact and law depends on the extrinsic consideration whether

its execution was authorized by the board of directors. As remarked in Story's Eq. Jur. § 700, as "it is a deed purporting to convey lands, * * its existence in an uncancelled state necessarily has a tendency to throw a cloud over the title." *Sherman* v. *Fitch*, 98 Mass. 59; *Ryan* v. *Mackmath*, 3 Bro. Ch. Rep. 15, note; *Colman* v. *Sarrell*, 1 Ves. Jr. 50, note; *Van Doren* v. *Mayor of New York*, 9 Paige, 388. Such a cloud a court of equity will remove, by declaring the deed by which it is created, and the record thereof, void. Authorities *supra*. With regard to this deed, then, the court below properly adjudged it and its record to be void, as respected the plaintiffs.

With regard to the deed from King to Canfield, we see no ground upon which it can be said to cast a cloud upon the title of the association to the real estate mentioned. The title to the real estate was in the association. King's deed is not the deed of the association, and does not purport to be; it is the deed of a total stranger to the title, and in no way of which we can conceive can it possibly affect or cloud the title of the association. As respected the title of the association to the real estate of the association, the deed was void upon its face. For this reason the court below was wrong in adjudging it to be a cloud upon the title of the association. Story Eq. Jur. § 700*a*.

This disposes of the findings of the court. We will now proceed to notice some of the points made upon the brief of the counsel for defendant Canfield, which are perhaps somewhat collateral to the foregoing findings of law, and which are not disposed of by what has already been said.

The first of these points is that there is a defect of parties, the Minneapolis Agricultural and Mechanical Association and King, though named as defendants in the pleadings, not having been served with process, nor having appeared in the action. The statute, as it has been applied by this court, requires that a defect of this kind be taken advantage of by answer or demurrer; otherwise, (as in the case at bar,) it is

waived. Gen. St. *c.* 66, §§ 74, 77, 78 ; *McRoberts* v. *Southern Minn. R. Co.* 18 Minn. 108 ; *Blakeley* v. *Le Duc,* 22 Minn. 476 ; *James* v. *Wilder,* 25 Minn. 305.

As to the position that this defect is of parties necessary to the determination of the action, without whose presence the court cannot proceed to such determination, it is to be observed that as, according to the views which we have heretofore expressed, the deed purporting to have been executed by the Minneapolis Agricultural and Mechanical Association was never executed by such association, and was not its deed, it was not necessary to make the association a party to the action, for it has no interest in the deed whatever—no more than it would have in a deed of the fair ground property made by a stranger, who neither had, nor ever claimed to have, any right or interest whatever in such property. If the deed had been in fact executed by the association, and this was an action to set it aside, a very different question would be presented.

With reference to King, it is to be remarked that he is not a party to the deed purporting to be made by the association. With regard to the deed made by himself, we think he is a necessary party to the action; but this is of little importance now, as we have before concluded that his deed creates no cloud upon the title of the association, and that, for this reason, the plaintiffs are not, as to him, entitled to the relief sought, or the relief granted by the court. As to the whole matter of necessary parties, it is to be observed generally that the question of who shall be made parties to a proceeding in equity is a question of convenience and discretion, rather than of absolute right, and a question to be determined according to the exigencies of the particular case. See Barb. on Parties, 327–8, and authorities cited. In granting relief, care should be taken not to affect the interest of persons not parties, or whose interests are not represented by some party. Now, in this case, the relief granted as respects the two deeds is confined to adjudging them and

the records of them to be void and of no effect as against the plaintiffs. As regards the King deed, this, for reasons already assigned, is wrong. Aside from this error, the effect of the relief granted is to determine that the deed purporting to be made to the defendant Canfied by the association, and which was not its deed, is, as against the plaintiffs, void and of no effect. For the purposes of this relief, we do not see why it was necessary that any other parties should be before the court, except Canfield and the plaintiffs. The important thing for the plaintiffs was to have the cloud removed. The removal of this, in the way indicated, in no respect affects the rights and remedies of Canfield against the persons who executed the deed which created it, or against King.

It is also contended by the defendant's counsel that the plaintiffs have no standing in court, because a stockholder, as such, could not sustain an action of this kind. It is an answer to this to say that, as remarked by the counsel in another part of his brief, the plaintiffs, though they hold the stock, are not stockholders, but pledgees merely, and therefore they cannot exercise the control over the association which stockholders can. What the stockholders may compel the association to do, they cannot compel it to do. They cannot, therefore, be required to act through the association, but may bring an action on their own account, and in their own names, to protect their rights and interest as pledgees.

Another position taken in behalf of defendant is that the plaintiff bank had no authority to "loan money upon mortgage security." From the case cited, we infer that this point has reference to the provisions of the national banking act, under which it is held incompetent for a national bank to loan money upon a mortgage of real estate. We are unable to see how these provisions can have any applicability to this case. The security here was stock, and although the property of the association by which the stock was issued was real estate, a pledge of the stock is in no sense of which we can conceive, a mortgage of the real estate of such association.

Upon a careful consideration of the evidence and findings in reference to the arrangement under which the plaintiffs were to surrender the stock in exchange for Northern Pacific railroad bonds, we are of opinion, without entering into details, that there is nothing which establishes any estoppel against the plaintiffs to call in question the deeds before mentioned. We discover nothing by which the plaintiffs were in any way bound to surrender the stock, or by which their rights as pledgees of the same were in any way to be impaired or affected, except upon the actual delivery of the bonds to them, or to. the Park Bank for them; and the bonds were never delivered. There is, so far as we can perceive, nothing which estops them from asserting their rights as such pledgees just as fully as they could have done if the arrangement spoken of had never been entered into.

Order affirmed.

NOTE. A motion for a reargument of this case was denied June 10, 1879.

BERRY, J. In accordance with the views expressed in our opinion upon the appeal taken in this action, from the order denying an application to set aside the decision and judgment, and the order denying a new trial, the defendant Canfield is entitled to a modification of the judgment, from which the present appeal is taken, as indicated in the opinion referred to. The objections to the regularity and correctness of the judgment in other respects than that to which the modification relates, do not appear to us to be well taken.

The judgment will be modified as above directed.