CASE 54--PETITION EQUITY--DECEMBER 2.

## Bank of Kentucky v. Bonnie Bros., Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. BANKS AND BANKING—CHARTER—LIEN ON STOCK.—Where under the provisions of a bank charter the corporation has a lien on the shares of a stockholder who may be indebted to it, a stockholder who endorses to the bank a note payable to him which

is discounted in due course of business, is indebted to the bank within the meaning of the charter without previous proceedings against the maker of the note.

2. PLEDGING OF STOCK TO THIRD PERSON—PRIORITY OF LIENS.—The right of the bank to a lien under such a charter provision on the stock of its share holders who may be indebted to it is to be enforced only by the corporation and exclusively for its benefit; and the courts will not sanction any effort upon the part of the bank or its officers to so use its charter lien as to favor or benefit a particular customer or depositor to the wrong or injury of others. In this case the share holder had pledged his stock as collateral to another creditor, and he becoming insolvent, the bank notified a third creditor and advised him to discount his notes at its bank, having knowledge of the previous pledge, in order to give such third creditor the benefit of the bank's charter lien.

HUMPHREY & DAVIE FOR APPELLANT.

1. In order for the Bank of Commerce to show a cause of action against DePauw it was necessary to allege that he endorsed these notes in the State where his endorsement carried with it the liability of an endorser on a bill of exchange; in the absence of such an allegation it will be presumed that he endorsed the notes in Kentucky, where he is liable only as assignor, and is not liable thereon unless the bank pursued the maker thereof with diligence. Hyatt v. Bank of Kentucky, 8 Bush, 193; Carlisle v. Chanberry, 4 Bush, 272; Short v. Trabue, 4 Met., 304; Aymar v. Sheldon, 27 American Dec.; Hunt v. Standard, 15 Ind., 33 (77 Am. Dec., 8); Rose v. Park Bank, 20. Ind., 94 (83 Am. Dec., 307); Nichols v. Porter, 2 W. Va., 13 (94 Am. Dec., 504); Ford v. Buckeye State (Ind.), 99 Am. Dec., 672.

2. The Bank of Commerce can not claim its banker's lien or charter lien upon DePauw's stock under the transaction which was begun, continued and ended, not as a legitimate banking operation, but to enable a third person to obtain a lien on stock which was meant to be for the benefit of the bank alone. Cook on Stockholders, Sec. 529; Bank of Utica v. Smalley, 2 Cowan (N. Y.), 770; White Bank v. Toledo Ins. Co., 12 Ohio State, 601;

DODD & DODD FOR THE BANK OF COMMERCE.

1. Under the statutes of Indiana, where the notes were made payable and the contract was to be performed, the notes were upon the footing of bills of exchange and they will be so treated by the courts of this State, although they would not be so if executed in Kentucky, with reference to the laws of Kentucky. Stevens

Bank of Kentucky v. Bonnie Bros., etc.

v. Greggs, 89 Ky., 461; Corbin v. Planters' National Bank, 87 Va., 665; Patterson v. Correll, 60 Ind., 128.

2. Every stockholder of the bank who draws or endorses a note to procure a loan from the bank is bound to know the terms of the charter and by-laws. His signature to the note is an inchoate pledge of his stock for security if so provided in the charter; his stock gives credit to his name and the bank grants the loan on its faith. Brent v. Bank of Washington, 10 Peters, 596; German Security Bank v. Jefferson, 10 Bush, 326.

HELM & BRUCE FOR BONNIE BROTHERS.

1. The Bank of Kentucky parted with nothing on the faith of this stock; it had previously lent the money and the stock was afterwards delivered to it gratuitously as a security and it thereby stepped into the shoes of DePauw himself voluntarily, and has no greater equities than he would have had. Worly v. Tuggle, 4 Bush, 168; Bank of Commerce v. Payne, 88 Ky., 466; Alexander & Co. v. Springfield Bank, 2 Met., 537; May v. Quinby &. Co., 3 Bush, 102.

2. A court of equity will never marshal assets and change the regular course of the law for the purpose of protecting one party at the expense of another party; but only where it can so marshal them as to protect everybody without injury to any one. Bispham's Principles of Equity, secs. 340 and 342; Pomeroy's Equity Jurisprudence, sec. 1414; Dorr v. Shaw, 4 Johnson's Chancery, 17; Story's Equity Jurisprudence, sec. 634; Carter v. Neal, 24 Ga., 346 (71 Am. Dec., 140); Wise v. Shepherd, 13 Ill., 42; Sanders v. Cook, 22 Ind., 436; 14 Am. & Eng. Enc. of Law, 699, 701; Reynolds v. Cooker, 18 Wendell, 594; Sterling v. Bright, 5 Watts, 229 (30 Am. Dec., 304); Kentucky Statutes, secs. 544, 573.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

This action was brought by Bank of Commerce of Louisville, Ky., against New Albany Rail Mill Company, Premier Steel Company, C. W. DePauw, Union Trust Company, of Indianapolis, assignee of C. W. DePauw, all non-residents, and Bank of Kentucky, to enforce a lien and subject collaterals to pay three promissory notes. The first, for $10,000, was, March 25, 1893, by New Albany Rail Mill Company, executed and made negotiable and payable four months af-

ter date at New Albany Bank to C. W. DePauw or order, who endorsed and had it discounted by Bank of Commerce. The second and third, each for $10,000, were April 20, 1893, at Indianapolis, Ind., by Premier Steel Company, executed and made negotiable and payable at New Albany National Bank, one thirty, the other ninety days after date, to C. W. DePauw or order, by him endorsed to Bonnie Brothers, a firm doing business in Louisville, and, as alleged, endorsed by them and discounted by Bank of Commerce.

There was in the lower court no contest about any collaterals except ninety shares of capital stock of Bank of Commerce owned by C. W. DePauw and supposed to be worth about $15,000, upon which it asserted and was adjudged to have a superior lien for the three debts.

In the answer of Bank of Kentucky, made a cross-petition against C. W. DePauw and Bonnie Brothers, these promissory notes executed to and held by it are set up, and the same bank stock asked to be applied to pay the amount due of them. The first, for $10,000, dated January 18, 1893, payable four months after date, and the second for $15,000, dated April 22, 1893, payable thirty days after date, were executed jointly by Premier Steel Company and C. W. DePauw. The third, for $25,177.90, was, June 29, 1893, executed by C. W. DePauw alone, and it contains a recital that there were deposited with Bank of Kentucky as collateral security for the two notes just mentioned, said ninety shares of Bank of Commerce stock, fifty shares of Indianapolis National Bank stock and twenty bonds of DePauw Plate Glass Company. But though that note comprises the sum of principal and accumulated interest of the other two, they

were retained, and though the ninety shares of bank stock were stipulated to be those deposited as security for the third note, the answer contains an averment, supported by evidence, that a certificate of that stock duly issued had in fact been previously assigned and delivered by DePauw to the Bank of Kentucky as security for the two preceding notes.

Whatever lien the Bank of Commerce may have upon shares of its capital stock owned by a debtor is merely statutory, and exists in virtue of section 6 of its charter, as follows: "The shares of capital stock shall be personal estate and transferable on books of the corporation according to its by-laws. But the corporation shall hold a lien on the shares of any stockholder who may be indebted to it. Such shares shall not be transferred without the consent of the president and directors until such debt shall be paid or discharged."

The note for $10,000, executed March 25, 1893, by New Albany Rail Mill Company to DePauw, appears to have been endorsed by him directly to and discounted in due course of business by Bank of Commerce before Bank of Kentucky had acquired by transfer of the certificate from him any lien upon or claim to the ninety shares of stock. And as the paper is by law of Indiana, where it was executed and presumedly endorsed, placed upon footing of bills of exchange, and according to the doctrine of Stephens v. Gregg, 89 Ky., 461, to be so treated by courts of this State, DePauw became, when he endorsed it and it was discounted by Bank of Commerce, indebted to that bank in meaning of the section quoted, and liable to suit on the note even without previous

abortive proceedings against the maker of it.   In our opinion
therefore, the Bank of Commerce certainly has prior right in
the present action to subject so much of said bank stock as
may be required to pay that note.

.   So the question left for determination is whether the resi-
due of the proceeds of the ninety shares of bank stock, if
any, shall be applied towards paying the two notes endorsed
by Bonnie Brothers to the Bank of Commerce; or the debts
of the Bank of Kentucky.

.   The certificate of stock was transferred by DePauw to
the Bank of Kentucky Saturday, May 6, 1893, as security for
the two notes of $10,000 and $15,000, executed by Premier
Mill Company and himself.   But the two notes for $10,000
each, executed by Premier Steel Company to DePauw and
endorsed by him to Bonnie Brothers, were not discounted by
the Bank of Commerce until Monday, May 8, 1893.   Never-
theless if the latter transaction was *bona fide*, and occurred
in due course of business and was for the benefit of the Bank
of Commerce, its lien, we think, covers also the other two
notes.   But the Bank of Kentucky acquired by transfer to
it of the certificate an equitable interest in or claim to the
bank stock which then prevailed against that of any other
creditor of DePauw except the Bank of Commerce, and was
subordinate to its lien only while the first-mentioned note
remained unpaid; and such right was not impaired by notice
given by DePauw at time of the transfer of his indebtedness
to the Bank of Commerce.   Therefore, if the two notes held
by Bonnie Brothers were subsequently discounted by the
Bank of Commerce for the purpose of giving them the bene-
fit of its charter lien, and resulting advantage or preference

over another creditor of DePauw or innocent purchaser of the stock, they could not have otherwise obtained, then the transaction was an unlawful use of the charter lien gratuitously and only for special purposes given by the Legislature.

The rule applicable here is thus stated in Cook on Stock and Stockholders, section 520: "The right of a corporation to a lien on the stock of its shareholders, as security for the payment of their debts to the corporation, is a right to be enforced only by the corporation and exclusively for its own benefit. Accordingly, it is held that the corporation can not become the assignee of the claim of some third person against one of its shareholders in order to enforce payment of that claim for the benefit of the third person by a recourse to the corporate lien on the shareholders stock." Two cases are cited in support of the text: White's Bank v. Toledo Insurance Company, 12 Ohio State, 601, and Bank of Utica v. Smalley, 3 Cowan, 770, one of them being essentially like this case. But if there was no authority to support it, we should not hesitate to adopt and apply the doctrine stated, because it is not only just, but accords with the intent and meaning of the statute which conferred upon the Bank of Commerce the right of lien, to be legitimately used for its own benefit and protection; not to wrong or overreach others.

That the two notes held by Bonnie Brothers were discounted by the Bank of Commerce, if at all, for their benefit and not its own, and the president of that bank at the time knew or had reasonable grounds to believe the ninety shares of stock had already gone into the hands of an innocent pur-

chaser or another creditor of DePauw, are facts fully established by the evidence.

It appears that DePauw was president of Indiana Rail Mill Company, Premier Steel Company and other corporations in Indiana, and that they, as well as himself, were in a failing financial condition and all subsequently failed. With a view to protect his creditors, as far as practicable, he transferred the ninety shares of stock, and on the same day transferred collaterals to Bonnie Brothers, supposed to be sufficient to cover their debts, though they proved to be worthless. He deposited no collaterals with the Bank of Commerce because, the debt it then had against him was amply secured by lien on the bank stock. On day of transfer of the stock to the Bank of Kentucky DePauw informed its president that the Premier Steel Company would probably, and in fact did, go into the hands of a receiver, and addressed a letter, containing same information, to the president of the Bank of Commerce, which was, however, not received until next day, but as soon as it was received the president, though it was Sunday, hastened to give Bonnie Brothers the information and advise them to have the two notes they held discounted by the Bank of Commerce, so they could get benefit of its charter lien, which was done the next day, Monday.

Bonnie Brothers did not then need the money arising from the discount of the notes, nor did they apply to the Bank of Commerce to have it done, for they at the time had on deposit with that bank $20,000 or more, and instead of being borrowers, were lenders of money, the two notes held by them being for money previously loaned to DePauw. Nor is

it pretended that the president of the Bank of Commerce had any other reason for suggesting, or they any for adopting, the scheme of going through the form of discounting the two notes, except thereby they might get an undue advantage of another creditor or purchaser they then did not have, nor could obtain without aid of the Bank of Commerce, and that the president knew, and had reason to believe, injury would be thereby done to another is apparent from the fact that before transferring the stock to the Bank of Kentucky, DePauw had offered it for sale to others, including the president of the Bank of Commerce himself.   The effort to favor Bonnie Brothers, customers and depositors of the Bank of Commerce, in the manner attempted may have appeared to the president proper and allowable, but in a legal aspect it can not be commended or sanctioned, for if, with the intent to benefit a particular customer or depositor, the president of a bank may pervert the intended and legitimate use of its charter lien to the wrong and injury of others, there is no reason why he may not just as well prostitute it for money consideration.

The lower court erred in denying the right of the Bank of Kentucky to residue of proceeds of the ninety shares of stock left after satisfying the note held by the Bank of Commerce on April 6th, when the transfer of the certificate was made by DePauw.   And the judgment is reversed for proceedings according with this opinion.