## OLAF BENSON AND OTHERS v. SAFFERT-GUGISBERG CEMENT CONSTRUCTION COMPANY AND OTHERS.[1]

April 4, 1924.

No. 23,930.

**Statutory lien of corporation not assignable.**

1. The statutory lien of a corporation on its own stock is a creature of statute. It is for the benefit of the corporation alone. It is not assignable by the corporation.

**Surety not subrogated to corporation's lien on its capital stock.**

2. A surety, paying his principal's debt to a corporation, will not be subrogated to the corporation's lien on stock which the principal held in it, but which he had transferred to a third party, for a valuable consideration, before the surety became bound.

**Surety not entitled to principal's stock pledged before surety became bound.**

3. The prior transfer of the stock, although not made on the books of the corporation, vested the legal title in the transferee so as to make applicable the maxim, "where there is equal equity, the law must prevail."

Action in the district court for Brown county to have plaintiffs subrogated to the rights of defendant cement corporation to a lien upon its stock standing in the name of William H. Gugisberg, deceased. The case was tried before Olson, J., who made findings and ordered judgment in favor of plaintiffs subject to the lien of

[1]Reported in 198 N. W. 297.

defendant bank on 40 shares for $3,500. From an order denying their motion for amended conclusions of law or for a new trial, plaintiffs appealed. Affirmed.

*George A. & C. H. MacKenzie*, for appellants.

*Frank Hopkins* and *Thompson, Hessian & Fletcher*, for respondent.

STONE, J.

After a trial by the court, this case comes here on appeal of the plaintiffs from the order denying them a new trial.

Plaintiffs, on April 17, 1920, became sureties on the bond of William H. Gugisberg, to secure the performance of his contract for the construction of a ditch. There was default by Gugisberg and plaintiffs have been compelled to pay some of the debts incurred by him in connection with the ditch contract. Among others, they paid the respondent, Saffert-Gugisberg Cement Construction Company (hereinafter referred to as the cement company), a considerable item representing the price of cement tile.

During all of the time in question Gugisberg was a stockholder in the cement company. To secure his indebtedness to it, that company had the statutory lien upon his stock which a Minnesota corporation has to secure its claims against stockholders.

The purpose of this suit is to subrogate plaintiffs, as sureties of the contractor, to the lien of the cement company on his stock. That purpose was frustrated below to the extent that respondent, Citizens State Bank of Fairfax (hereinafter referred to as the bank), was held to have a superior lien on 40 shares. That lien arises from the pledge of those shares by the owner, Gugisberg, to the bank on December 31, 1919, to secure a loan of $3,500.

The only question for review is as to the propriety of the decision below as to the 40 shares in question. Who should have priority—plaintiffs, the sureties of the contractor, who claim under the cement company, or the bank, to which the stock certificates were pledged by the contractor?

The sequence of events is important. (1) Gugisberg borrowed the money from the bank, and pledged the 40 shares as security on December 13, 1919; (2) the ditch contract was let to Gugisberg,

and the plaintiffs became sureties on his bond April 17, 1920; (3) the tile was purchased from the cement company by Gugisberg January 8, 1921, and on that date the lien of the corporation on Gugisberg's stock attached to secure the purchase price of the tile.

The stock certificates so pledged were assigned and the certificates delivered to the bank, but the transfer was never made on the books of the cement company. Neither was any notice given to it of the transfer to the bank. It acquired no knowledge of that transaction until long after it sold the tile to Gugisberg.

The lien of a corporation on its stock arises under section 6176, G. S. 1913. That statute has been construed in several cases, among others, Dorr v. Life Ins. Clearing Co. 71 Minn. 38, 73 N. W. 635, 70 Am. St. 309; U. S. & Canada Land Co. v. Sullivan, 113 Minn. 27, 128 N. W. 1112, Ann. Cas. 1912A, 51.

For present purposes, we assume that the cement company, by reason of its lack of notice of the pledge to the bank, could have enforced its lien on all of the Gugisberg stock, including that held by the bank. Prince Investment Co. v. St. Paul & S. C. L. Co. 68 Minn. 121, 70 N. W. 1079.

The problem is one of priority and to be determined by the appropriate principles of equitable jurisprudence. In the event of equality of equity otherwise, the interest first to attach must be given priority pursuant to the maxim: "Where there are equal equities, the first in order of time shall prevail." Unless, therefore, the equity of plaintiffs is inherently so superior to that of the bank that the latter's advantage as to time is overcome, the bank should prevail. Priority of time alone does not solve such a problem and we must therefore examine and compare the two equities and determine their respective merits. Plaintiffs are not asserting a legal right. Subrogation is a pure equity and therefore to be enforced only according to equitable principles. Here it must yield to the right of the bank, which has the advantage in point of time, unless it is found to be clearly superior because of its intrinsic equitable merit.

The lien of a corporation on its own stock, to secure its claim against stockholders is a creature of statute. It exists for the

benefit of the corporation alone. It is enforced solely by the corporation's possession and control of its transfer books. It cannot be assigned. Bank of Ky. v. Bonnie Bros. 102 Ky. 343; 4 Thompson, Corp. § 4016; Boyd v. Redd, 120 N. C. 336, 27 S. E. '35, 58 Am. St. 792. It would be an unheard of thing for a corporation, when transferring a promissory note or other money demand against one of its stockholders, to attempt to pass also the lien on the debtor's stock which secured the demand as long as the corporation remained the creditor. The original creditor, the corporation, being disabled from transferring the lien, it is difficult to see how the law, operating for the occasion as equity, can make the transfer. The law is not much in the habit of doing for contracting parties what it does not permit them to do for themselves. Yet that is what it is desired to have done here. The cement company could not have transferred its lien on Gugisberg's stock to plaintiffs. Still they are here asking that the law make the transfer for them.

Plaintiffs became bound as sureties on April 17, 1920. They did not become so bound on the faith of Gugisberg's cement company stock. They did not contract with special reference to any of it. Nor can they be considered, as against the bank or otherwise, to have contracted with general reference to it, or on the faith of it, as a part of Gugisberg's assets. That was impossible because the stock was already in pledge to the bank. So much for the equity of plaintiffs—which is not to be advanced beyond its proper deserts simply because it goes by the meritorious name of subrogation. It remains still a pure unmixed equity.

Turning now to the bank's equity, we find it characterized thus: The bank has the stock certificates. It has them in physical possession. In addition to their manual delivery, it took under a written assignment, absolute and in terms reserving none of the rights of ownership in Gugisberg. Moreover, the assignment contained the usual power of attorney (this one fact we assume—the record does not make it appear in so many words), whereby the bank, as assignee, could have caused a transfer to it to have been made on the books of the cement company. By the written assignment and its possession of the certificate, the bank disabled Gugisberg, the

owner, from assigning the stock to any one else, even to the cement company, or from creating in another any interest superior to its own.

It would be a somewhat anomalous thing if it should now be discovered, that plaintiffs, strangers to the original transaction, who never dealt with Gugisberg or the cement company on the faith of his stock, are in a position to take it away from the bank.

Equity looks carefully into such a transaction and considers particularly its inducements. Here there was no reason why the bank should not have taken the stock in pledge. The cement company then had no claim on it. The owner was not indebted to the corporation. It was unencumbered property and, on the faith of it, the bank loaned $3,500. It *dealt with respect to this particular property and acquired a specific lien upon it*, an equitable interest acquired for a valuable consideration and evidenced by the written assignment, the power of attorney to transfer on the corporation's books, and the possession of the certificates themselves. Therein, as we view the situation, the bank has a much better equity than plaintiffs, who never dealt with Gugisberg with respect to, or on the faith of, the stock now in question. They have never, for themselves or in their own right, acquired an interest, equitable or otherwise, therein.

Plaintiffs' rights attached when they become sureties for Gugisberg. They underwrote his ditch contract on the faith of his ability as a contractor and his financial standing as it was then. At that time he was indebted to the bank and his 40 shares of cement company stock were in pledge to it. If plaintiffs were in ignorance of that transaction and the consequent impairment of Gugisberg's assets, it was their own affair.

Equity has more regard for a specific interest in rem than for a general interest in the way of a blanket charge. Pomeroy, Eq. Jur. § 685. Here, when plaintiffs became Gugisberg's bondsmen, they acquired the right, in the way of a general charge, to have his property used to save them from liability. That of course was a very inferior sort of right, so far as concerns this stock, to the specific interest therein, the right in rem, already vested in the bank.

A final circumstance fortifying the priorty of the bank is that, by the assignment from Gugisberg, it got the legal title to the stock. The failure to make the transfer on the books of the corporation did not avoid that result. Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261, 276; Lund v. Wheaton Roller Mill Co. 50 Minn. 36, 52 N. W. 268, 36 Am. St. 623; Peavey v. Wells, 136 Minn. 180, 161 N. W. 508. So, if this were a case of equal equities—and we consider that in equity alone it has the better case—the bank's claim would be sustained, for "where there is equal equity, the law must prevail." All else aside, the legal title of the bank, acquired by the transfer of the stock to it, would prevail over plaintiffs' right of subrogation— if in fact it might have such a right otherwise.

These considerations compel the conclusion that the bank's equity is superior in quality as well as time to that of plaintiffs.

The only reason assigned contra is that the process of subrogation ordinarily carries to the subrogee all of the creditor's rights by way of lien and priorities. As a general proposition, that is true. 37 Cyc. 426.

In Klopp & Stumpf v. Lebanon Bank, 46 Pa. St. 88, accommodation drawers of a note to a bank were subrogated to the bank's statutory lien on the stock of the defaulting payee. The subrogation was allowed as against a prior assignment of which the bank had no notice until after its lien attached. That result ignored the fact that the lien was not assignable by the bank and was reached by holding that it held the lien "for its own security until payment, and for the benefit of the sureties of a debtor, if there be any, afterwards." That quotation is from the syllabus. In the opinion the court said: "The debt is the object of the lien and for which it is a security, and it is this security that equity lays hold of, for the benefit of the sureties."

It is of course clear that equity will not carry that process to the extent of defeating a more meritorious equity than that of the surety seeking subrogation. In such a case, we come back to the rule that "subrogation is the creature of equity, and will not be permitted where it will work injustice to the rights of those having

equal or superior equities, or where it will operate to defeat a legal right." 25 R. C. L. 1321.

Although of the "highest equity," subrogation is purely "an equitable result." It "does not depend upon contract but rests alone upon principles of justice and equity; and therefore, when his claim to such a right is contested, it depends on facts to develop and determine the rights of the parties." It "will not be allowed if it would do substantial wrong." Eaton v. Hasty, 6 Neb. 419, 29 Am. Rep. 365. See annotation of Nelson v. Webster, 68 L. R. A. 513, 526.

In Kentucky, it is held that a surety's subrogation to the rights and liens of a creditor will not be allowed to defeat an interest acquired and held by a third person, when that interest, though subordinate to the creditor's lien, is prior in date to the surety's undertaking. Patterson v. Pope, 5 Dana (Ky.) 241; Sheldon, Subrogation, § 111.

Any other rule would so exalt the right of subrogation as to make it an instrument of injustice rather than of equity. We prefer to hold that it is not different from other equities; that it is not inherently superior to them, and that here, for the reasons indicated, it is inferior to the right of the bank as a prior assignee for a valuable consideration of the stock in question.

Order affirmed.