JAMES W. COCHRANE v. FRANCIS ADAMS, CAROLINE F. BROOKS AND LUTHER L. HOTCHKISS.

*Demurrer—Right to accounting—Trusts.*

General demurrer for want of equity raises only the question whether there is any equity whatever in the bill.

The right to an accounting in equity is incident to most trust relations, and is not cut off by waiver of an answer under oath.

C. agreed with B. & A. that the latter should make advances to pay for certain lands and for lumbering them; that title should be taken in their name and they should have a lien for the advances until paid and half the logs and half the profits after payment. C. proceeded to lumber the lands and B. died and was succeeded in the arrangement by his wife to whom A. sold out. Mrs. B. refused to permit C. to do any more lumbering and made a partnership arrangement with H. under which they lumbered the lands themselves and sold the logs. C. filed a bill against A., Mrs. B. and H. for an accounting and for payment of balances. *Held* that, even though there was not strictly a partnership, B. & A. became C.'s trustees for land and timber, and the bill made out a sufficient case for answer and proofs.

Appeal from Midland.   (Gage, J.)   Jan. 9.—Jan. 17.

BILL for accounting and dissolution of co-partnership. Complainant appeals.   Reversed.

*Stanford & Van Kleeck* for complainant. Equity regards property as belonging to a partnership where it was meant to be so considered: *Merritt v. Dickey* 38 Mich. 44; and one who conducts a business and receives its proceeds, including the net profits, is properly impleaded as defendant to a bill for an accounting: *Ramsdell v. Millard* Har. Ch. 373; *Heath v. Waters* 40 Mich. 457; *Pendleton v. Wambersie* 4 Cr. 73; equity has general jurisdiction in accounting: Will. Eq. Jur. 92; *Post v. Kimberly* 9 Johns. Ch. 469; an agreement to pay profits gives a right to an accounting in equity: 2 Lindl. Partnership 946; *Hallett v. Cumston* 110 Mass. 33.

*Geo. W. Mann* and *Benton Hanchett* for defendants.

CAMPBELL, J.   This case was heard below, in the circuit court for the county of Midland in chancery, on a general demurrer for want of equity and the bill was dismissed. As on such a demurrer the only question is whether there is any equity whatever in the bill, we must limit ourselves to that inquiry, without speculating on the general merits or facts not actually before us.

The bill sets up—*first*, an agreement with complainant, made in August, 1871, whereby it was in substance provided that the firm of Brooks & Adams of Detroit, consisting of Nathaniel W. Brooks and defendant Adams, would advance money enough to pay for a section of land described and for lumbering it, or so much as the parties should consider proper and advisable to lumber during the winter of 1871-2. Complainant was to allow interest on the advances and Brooks & Adams were to have a lien for these until paid, and to have half the logs and half the profits after all such indebtedness was paid, and to have a pre-emptive right to take complainant's logs at market price whenever he wished.

50 MICH.—2

to sell his interest.   The title to land and timber was to be taken in the name of Brooks & Adams; complainant's services in looking after the lumbering were to be gratuitous.

It then sets out the steps taken and moneys paid or contracted for the land.   It also shows that being unable to find any other competent person to do the lumbering, it was agreed that complainant should cut and deliver the lumber in the boom limits of the Tittabawassee Boom Company at $4 a thousand, and that this was done in 1871, 1872 and 1873, to the amount of 6 millions, some being cut on the section referred to and some on other lands under the same terms and arrangement.   These other lands and the time of purchase are set forth.

In September, 1872, and subsequent to these purchases, Brooks died, and defendant Caroline Brooks was his sole legatee, and the business was continued by complainant as before, she taking her husband's place in the business, and money was advanced and services rendered in the same manner as during Brooks' life.

In January, 1873, Adams sold out to Mrs. Brooks, and complainant continued the work until the spring of 1873, when he had delivered six millions of logs as before mentioned.

In the fall of 1874, complainant having his camps, roads and other preparations made and a considerable amount of logs remaining uncut, Mrs. Brooks by Hotchkiss, her agent, refused to permit him to do any more lumbering.   Hotchkiss and Mrs. Brooks made a partnership arrangement together and lumbered the lands, and then sold them to one McKeary in 1877.

The bill also sets out in considerable fullness of detail the pecuniary items of advances and values of logs, but not in all cases the particular defendants who made the payments and advances, which he cannot state definitely.   He also charges that logs were taken without his consent and sawed up by defendants.   This averment covers all of the defendants.   He asks for an accounting and payment of balances.

The defense as made on the argument is that the remedy

is at law for the amounts averred, and that the case was not one of partnership.

It is certainly consistent with the bill that there was no partnership in the strict sense of the term. But it is equally certain that if the bill is true, Brooks & Adams became trustees for complainant of land and timber, and that Mrs. Brooks and Hotchkiss succeeded them in some portion of that trust. Whatever may be the facts the bill does not show any such full or final accounting as would terminate the relations of the parties and leave him only a remedy for the balance ascertained. Under the theory of the bill some trust property has been disposed of contrary to complainant's rights.

The right to an accounting in equity is incident to most trust relations, and is not cut off by a waiver of an answer under oath. Unless it is clear that complainant is already fully informed, he has a right to the information and the accounting. The bill, while it does contain somewhat full averments of particular items of money, does not show all that complainant claims, as thus ascertained, and does not show the responsibility of the several defendants—as distinct, one from the other—for these several claims. As the case stands the defendants have all been more or less connected directly or by succession with the trusts, and it cannot be determined, therefore, of necessity, that there has been any discharge by lapse of time. We do not propose at this stage of the cause to discriminate between the various classes or items of claims, because the only question before us is whether the bill contains any equities whatever. We think it does make out a sufficient case to call for an answer and to admit proofs, and that it does not appear on the face of the bill that complainant should be confined to a remedy at law.

The decree must be reversed with costs, and defendants must answer.

The other Justices concurred.