FOWLER v. FOWLER.

(Circuit Court, M. D. Pennsylvania. February 21, 1905.)

No. 3.

1. DEEDS—EXECUTED GIFTS—REVOCATION—FRAUD.

Where complainant executed a conveyance under seal of all her interest in her brother's estate for a recited consideration of $1 and certain payments to be thereafter made, such conveyance, being in the nature of an executed gift, would not be set aside in equity unless fraudulently obtained.

2. SAME—EVIDENCE.

In a suit to set aside a deed of complainant's interest in her brother's estate, evidence *held* insufficient to establish that complainant was induced to execute the deed by fraudulent representations.

In Equity. On final hearing.

Frank Hasbrouck, Abram J. Rose, and Russell Dimmick, for complainant.

H. M. Hannah and E. N. Willard, for defendant.

DALLAS, Circuit Judge. James W. Fowler died intestate at the city of Scranton, in the state of Pennsylvania, on the 11th day of November, 1903. His widow, Achsah B. Fowler, the defendant, and his sister, Sarah Fowler, the plaintiff, survived him. His father and mother died before he did, and he left no issue or lineal descendants, no brother or sister (other than the said Sarah Fowler), and no nephew or niece. Consequently, under the law of Pennsylvania, the widow was entitled to one-half part of his real estate for the term of her life, and to one-half part of his personal estate absolutely; and, subject to the widow's life estate in the realty, it descended to his sister, Sarah Fowler, in fee simple, and she was likewise entitled to the remaining one-half of his personal property absolutely. At the time of his death he owned a piece

of real estate in the city of Scranton, being the dwelling house in which he had resided for many years, which was of the value of about $8,000, and also certain personal property, consisting of government bonds, shares of bank stock, and cash, to the value of about $26,000. On the day of its date a deed was executed and acknowledged by the respective parties to this suit, which the defendant afterwards caused to be recorded in the office of the recorder of deeds of Lackawanna county, Pa., of which the following is a copy:

"This indenture made and concluded this 24th day of November, A. D., one thousand nine hundred and three, by and between Sarah Fowler, of the city of Poughkeepsie, in the County of Duchess, and State of New York, party of the first part, and Achsah B. Fowler, of the City of Scranton, in the County of Lackawanna, and State of Pennsylvania, party of the second part:

"Witnesseth: That whereas, James W. Fowler, late of City of Scranton, the brother of the first party, and the husband of the second party, is recently deceased in said city, leaving certain real estate and personal property hereinafter more particularly described, but leaving no children, and no other heirs at law except the parties hereto: And whereas, the said James W. Fowler, is believed to have made and executed a last will and testament prior to his decease, wherein and whereby he disposed of all his estate, real and personal, but such will or testamentary instrument has not yet been found:

"Now, therefore, for the purpose of settling and adjusting the respective rights of the said parties in and to the real and personal estate of the decedent, and for the further purpose of avoiding litigation and delays in the settlement of the said estate, this indenture has been executed.

"And the said Sarah Fowler, party of the first part, for the purposes aforesaid, and for the consideration hereinafter set forth, hath remised, released and forever quitclaimed and doth hereby, for herself, her heirs and assigns, forever remise, release and quitclaim unto the said Achsah B. Fowler, her heirs and assigns, all the estate, right, title, and interest of the said first party in law, or equity, or otherwise howsoever, of, in, to, or out of all that certain lot, piece or parcel of land situate in the City of Scranton, County of Lackawanna, and State of Pennsylvania, and known as number 819 Linden Street, in said City, and being sixty feet wide in front on Linden Street, and extending back along a public alley at right angles to Linden Street one hundred and forty-nine feet: Also all the right, title and interest of the said first party in and to any and all personal property of the said James W. Fowler, deceased, consisting of Five United States Government Bonds of the denomination of Five Hundred Dollars each, bearing date July 1st, 1877, and numbered respectively, Nos. 20193, 20194, 20195, 20196, and 20197; also ten shares of the capital stock of the Third National Bank of Scranton, represented by certificate No. 59; also one dividend check of the Third National Bank of Scranton, for the sum of One Hundred Dollars, No. 4927, bearing date of November 14, 1903, and payable to James W. Fowler; also all moneys now on deposit in the name of, or to the credit of, said James W. Fowler in the First National Bank of Scranton, and the Third National Bank of Scranton, whether the same be interest accounts or otherwise; and also, all household furniture and goods, wearing apparel, and all other personal property of whatsoever kind and wheresoever situated, late of the estate of said decedent, James W. Fowler.

"Together with all and singular the buildings and improvements, members or appurtenances whatsoever unto the aforesaid lot of land belonging or appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. And also, all the accrued interests, profits, income or dividends arising from or accruing out of the personal property aforesaid, or any part thereof.

"To have and to hold the said real estate, together with the appurtenances thereto, and all of the said personal property as aforesaid, unto the said second party, to and for the only proper use, benefit and behoof of the said second party, her heirs and assigns forever.

"In consideration whereof the said second party hereby agrees to pay to the said first party the sum of One Dollar, lawful money of the United States, at and upon the execution hereof, and in addition thereto to pay to the said first party, during the term and period of her natural life, one-half of the net income, profit or revenue, issuing out of or arising from the personal property of the said decedent, James W. Fowler, after the payment of all debts and obligations of the said decedent, and the costs and expenses of the administration of the said estate; but at and after the death of said first party, such payments shall entirely cease and determine.

"In witness whereof the said parties have hereunto set their hands and seals, the day and year first above written.

"Words 'real and' on third page interlined before signing.

"Sarah Fowler. [L. S.]<br>"Achsah B. Fowler. [L. S.]

"The words 'real and' which were interlined on third page erased before execution.

"In Presence of:
"Stephen G. Guernsey.
"A. Williamson."

The object of the bill is to procure the cancellation of this deed, for which it is alleged there was no consideration, and which it is averred was obtained by fraud.

At law a seal conclusively imports consideration, but in equity, where consideration is requisite to support the instrument, its existence must be shown. In the present instance the deed mentions the nominal consideration of $1. The evidence warrants the finding that this sum was actually tendered to the plaintiff immediately after she executed the document, and that she either declined to accept it, or returned it to the defendant, not because she intended to repudiate what she had done, but because the appearance of being paid for doing it was distasteful to her. It is, however, quite unimportant what occurred with respect to this formality, for, although the transaction was undoubtedly a gift, and is to be so regarded, yet, being fully executed, equity will not revoke it unless it was wrongfully obtained. Stone v. Hackett, 12 Gray, 227; Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446; Sanborn v. Goodhue, 28 N. H. 48, 59 Am. Dec. 398; Fasset's Appeal, 167 Pa. 448, 31 Atl. 686; Corle v. Monkhouse, 50 N. J. Eq. 537, 25 Atl. 157; Walker v. Dixon Crucible Co., 47 N. J. Eq. 342, 20 Atl. 885; Grover v. Grover, 24 Pick. 264, 35 Am. Dec. 319; Pickslay v. Starr, 149 N. Y. 432, 44 N. E. 163, 32 L. R. A. 703, 52 Am. St. Rep. 740; Bedell v. Carll, 33 N. Y. 581. See, also, notes to Cochrane v. Moore, 12 Eng. Rul. Cas. pp. 428, 434.

The deed upon its face is a sufficient and valid conveyance, and, apart from the allegation of lack of consideration, the only ground upon which it is asked that it shall be set aside is thus averred in the bill:

"The said agreement was executed by your orator because of the statements and representations made to her by said defendant, as hereinbefore set out, and in ignorance of the rights and interests of your orator in the premises, and was and is fraudulent and void."

Waiving the point that it is here specified that the fraud averred was practiced by means of statements and representations set out in the bill, and that in fact the bill does not set out any statement

which the defendant is alleged to have falsely made, I have carefully examined the evidence with a view to determining whether it has been shown that by any means whatever or in any way the defendant deceitfully imposed upon the plaintiff.

Each party testified on her own behalf. On several points their testimony was conflicting. If the defendant's account of what transpired between them before they visited the office of Mr. Guernsey, a notary and attorney at law, where the paper was signed and acknowledged, is true, then the plaintff was fully informed of its nature and effect before she executed it; but, if the plaintiff fully remembered and correctly stated the substance of the conversation which they had previously had, then she accompanied the defendant upon that visit in absolute ignorance of its real purpose. No third person was present when this conversation occurred, and therefore the allegation of the bill "that said Achsah B. Fowler did not state to your orator for what purpose she wanted to see a lawyer, nor did your orator know why said Achsah B. Fowler wanted to see a lawyer," could not be, and it was not, supported by any evidence other than the testimony of the plaintiff herself, and that was positively contradicted by the testimony of the defendant. I am unwilling to ascribe to either of these parties a deliberate intention to falsify, and it is not wholly inconceivable that the defendant may have been deluded as to what was not said by the plaintiff; but it would be quite impossible to believe that the plaintiff's circumstantial statement of what she did say could be in any substantial respect untrue, and yet not have been artfully fabricated. It seems to me, too, that it is inherently more probable that the plaintiff, before going to the notary's office, would have been informed of the business to be transacted, than that she should have gone there without making inquiry or receiving any information upon the subject. It is, moreover, to be borne in mind that this is a suit to set aside a solemn instrument of writing upon the ground of fraud; and to maintain the fundamental position of the plaintiff, that she executed it without knowing what it was, her own uncorroborated and contradicted testimony will not suffice. Cases infra.

The plaintiff called Mr. Guernsey, to whom reference has been already made. I accord full belief to his testimony. His account of what occurred at his office may be briefly summarized. Mrs. and Miss Fowler visited him on the 24th of November, 1903. Mrs. Fowler said they had come to have a paper acknowledged, and asked him if he was a notary. She handed him the paper. He read it over first to himself, and then said it was an important paper—he thinks he told Miss Fowler that "she seemed to be conveying away her rights"—and he asked her if she had consulted her attorney in regard to it. She said she had not; that she did not then have an attorney. He then said: "Miss Fowler, it is an important paper; and you really ought not to sign it without knowing what you are doing." To this he thinks she made no reply, but that Mrs. Fowler said "it was fully understood between them, and that they didn't come there for advice in regard to the

paper, and simply came for a notary. They came to have it simply acknowledged." He then read the paper over aloud, and, upon reaching the words "real and," which were interlined in it, Mrs. Fowler said: "That is wrong, the real was not intended to be in there, and I don't see why my attorney put it in there, because I directed him that it should only be as to personal property." Mr. Guernsey then stated that he could erase that, and Miss Fowler said nothing, and he assumed that she assented to it, and he erased it. Mr. Guernsey remembered that something was said by Mrs. Fowler to Miss Fowler to this effect: "He is speaking of the income of the home. Do you want the income of the home?"—and that Miss Fowler said she did not; she replied, " 'No,' or in some equivalent word." Mr. Guernsey then continued the reading of the paper, and thereafter directed its signing and witnessing, and took the acknowledgment. He suggested that it would be a good thing for Miss Fowler to have a copy of it, and he thinks that Mrs. Fowler said there was no objection. The copy was made, and was given to Miss Fowler. The evidence shows that Miss Fowler's hearing was somewhat impaired; but I see no reason to doubt that she was able to hear Mr. Guernsey's reading of the deed, and that, if she did not do so, it was because she gave no attention to it. He testified that "she remained quiet and did not have anything to say, and I [he] assumed that she was paying attention and heard what was being said. There was nothing to indicate it one way or the other. She did not say anything." She did not ask to have any portion of it re-read, nor suggest that she did not hear it. Mr. Guernsey had no doubt that she heard him say that the paper was an important one; and he testified that Mrs. Fowler spoke plainly in making the remark that they did not want the services of an attorney; that they had talked it over and knew what they were doing, and simply wanted the services of a notary—but that Miss Fowler made no reply to this. He did not ask Miss Fowler anything further, to ascertain whether she knew anything about the contents of the paper, but said, "Very well," or words to that effect, and thinks it was Mrs. Fowler who asked him to read it. He supposed he read it so that both could hear it, and was under the impression that both did hear it.

The stenographer who was in the employment of Mr. Guernsey was also examined, but her testimony adds little or nothing to his. She was in a room adjoining his private office. She did not pay any attention to the conversation, but heard some of it, although she was some distance from them. She heard Mr. Guernsey read the paper. As she remembers, Mrs. Fowler did the most talking. She "don't know" whether Miss Fowler paid any attention to the reading, but "should have thought she was listening."

The only other witnesses produced by the plaintiff were Mr. and Mrs. Schwartz, but they seem to have had no knowledge of any important fact, and their testimony need not be particularly referred to.

Upon all the evidence—and I think the especially material parts of it have been adequately epitomized—I have no hesitation in

holding that the deed of November 24, 1903, ought not to be disturbed. I have not been convinced that the allegation of fraud has been supported by even a preponderance of proof, and it seems to me to be perfectly plain that, at least, it has not been maintained with the degree of certainty required by the well-established rule that "when, in a court of equity, it is proposed to set aside, annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence, which leaves the issue in doubt." Maxwell Land Grant Case, 121 U. S. 325, 381, 7 Sup. Ct. 1015, 30 L. Ed. 949; Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 1112; Treat v. Russell, 128 Fed. 847, 63 C. C. A. 575; Brawdy v. Brawdy, 7 Pa. 157; Phillips v. Meily, 106 Pa. 545; Goggins v. Risley, 13 Pa. Super. Ct. 316; Simon's Estate, 20 Pa. Super. Ct. 450; Hupsch v. Resch, 45 N. J. Eq. 657, 18 Atl. 372.

If Mr. Fowler's estate had all passed to his widow, it would have constituted but a moderate provision for her; and she, not unnaturally, supposed that he had made a will, but none was found. She consulted a reputable lawyer, who cannot for a moment be suspected of having consciously abetted or countenanced a fraud, and by him this deed was prepared. Miss Fowler does not appear to have been in want. She was at least 70 years of age, and had no relative nearer than a second cousin. Under these circumstances, I see nothing unreasonable in the belief, which, no doubt, Mrs. Fowler and her counsel entertained, that Miss Fowler's assent to the arrangement for which the instrument provided might, upon a full and truthful disclosure of the situation, be obtained. I am satisfied that Mrs. Fowler's conduct was based upon this belief, and was accordant with it; and I think that a finding that she went to the home of her sister-in-law with the infamous design of depriving her of her interest in her brother's estate, either by misrepresenting or by concealing material facts, would be wholly unjustifiable. On the contrary, I believe that she completely and honestly explained what she desired, and that the plaintiff fully understood and freely assented to it before they went to Mr. Guernsey's office; and, with this in mind, Miss Fowler's apparent indifference to the proceedings there, and her acquiescence in the statements of Mrs. Fowler, appear to have no significance, except as they indicate that Miss Fowler was contented to act upon the information which she already possessed. It was, as Miss Fowler herself has testified, not until some days after Mrs. Fowler had returned to Scranton (Mr. Schwartz says ten days or two weeks after) that she examined the duplicate of the deed which she had received at Mr. Guernsey's office. She then, as she has said, "began to feel a little worried about it," and "showed it to Mr. Schwartz," the husband of her second cousin. She became dissatisfied with what she had done, and was desirous of recalling it; but the authorities heretofore referred to abundantly show that mere alteration of intention on her part does not entitle her to

the interference of a court of equity for cancellation of an executed deed, and, in my opinion, she has utterly failed to establish any better title to such relief.

Let a decree be drawn dismissing the bill of complaint, with costs.