JOHNSTON *v.* FREDERICK STEARNS & CO.

1. SPECIFIC PERFORMANCE — CONTRACTS — CONSIDERATION — ACCOUNTING.

Sufficient consideration to support a contract by an employer to convey stock in the concern to a valued employé as an inducement to his remaining and taking an interest in the business, is inferable from an agreement to give the employé twenty shares of stock to be paid for out of the earnings of the stock and subject to the employer's right of purchase reserved in the instrument, which will justify proceeding in equity for an accounting and the specific performance of the obligation

2. SAME—ACCOUNTING—BAILMENT—PLEDGE.

By a clause in the agreement stipulating that the employer may retain control of the stock as security, the relation of pledgor and pledgee is created, warranting an accounting in equity from the latter who controlled the sole means of ascertaining the state of the account, to determine whether and when the stock had been fully paid.

3. SAME—MUTUALITY—RELIEF.

While a provision in the instrument requiring the complainant to offer the stock to the employer before transferring his interest to third parties may not be specifically enforceable as to the employé, the fact will not relieve the other party from his obligation to transfer the stock to the defendant after being fully paid for it.

Appeal from Wayne; Murphy, J. Submitted February 9, 1910. (Docket No. 128.) Decided March 5, 1910.

Bill by Leonard Johnston against Frederick Stearns & Company for an accounting. From an order overruling a demurrer, defendant appeals. Affirmed.

*McDonald & Fowler*, for complainant.

*H. E. Spalding*, for defendant.

MONTGOMERY, C. J. In 1885 it appears that the complainant was employed by the defendant corporation as foreman in a box manufacturing establishment. On the 27th of March of that year an agreement was entered into between the parties, which we quote at length:

" March 27th, 1885.

"LEONARD JOHNSTON:

"In consideration of your position here and the value of your services to us, we will sell you 20 shares of our capital stock at $50.00 per share and will issue a certificate to you therefor when this stock shall have been paid for by you out of your share of the total net earnings of the business.

"When said net earnings shall have equaled $1,000.00 such certificate shall be delivered to you but until such time the company shall hold said certificate as collateral for such payment and thereafter you shall be entitled to such dividends as may be declared thereon.

"F. Stearns & Co. reserve the right of preference to purchase your stock should you desire to sell it for any reason whatsoever.

"We expressly reserve the right in case of your leaving our employ for any reason whatsoever, or in case of your death, to buy back from you or your heirs as the case may be this amount of stock at the amount already credited to you in its favor if not entirely paid for or if paid for entire at its face value plus earnings not paid you. We do not bind ourselves to purchase any stock but reserve the privilege or preference to do so if we desire. We expect in return for this concession on our part that your increased interest in us and our affairs may repay us for this interest taken in you.

[Signed]        "F. STEARNS & CO.

"I buy said twenty shares of stock at $50.00 a share upon the terms and conditions of the above proposition made by F. Stearns & Co. and I further agree in consideration of said sale to me to bind myself to the following conditions:

"(1) This transaction shall not be mentioned, written or communicated by me to any one except by written permission of F. Stearns & Co.

"(2) I promise not to divulge in any way at any time anything relating to the business of F. Stearns & Co. either of their works, their office, their meetings or anything pertaining to their affairs.

"(3) I agree if I leave their employ from any cause whatsoever or am discharged for cause before this stock is fully paid for to offer it back to F. Stearns & Co. for the amount already credited to me on its account and I do bind my heirs in case of my death to do the same.   If I have paid for it in full and it is in my possession, I agree to offer it to F. Stearns & Co. in case I leave their employ at its original cost plus undivided earnings due me at the time of my leaving.

"(4) I will never offer my stock for sale after it comes into my possession until I have offered it first to F. Stearns & Co. and I will never offer my stock or sell it to any one while I remain in the employ of F. Stearns & Co. unless it be to F. Stearns & Co.

"(5) It is further understood and agreed by me that in case of my being convicted of any crime while in the service of F. Stearns & Co. and before I have fully paid for this stock, or in the event of my violating the business rules of this company in such manner as it is proven by the directors to be of serious financial or other injury to the company, then in such event this stock to revert back to F. Stearns & Co. without any liabilities or obligations on the part of F. Stearns & Co. to pay the earnings already credited to me upon said stock.

"March 27th, 1885.
[Signed]        "Leonard Johnston."

On the same date a statement was handed to Mr. Johnston in the following terms:

"Detroit, Mich., March 27th, 1885.
"Leonard, Johnston:
"This is to certify that we have this day sold to you

twenty shares of our capital stock at fifty dollars a share, the certificate of which has been made out in your name, and is to be held by us as collateral until the items and conditions enumerated in our agreement of this date shall have been faithfully carried out by you.

[Seal]        "F. STEARNS & CO.

"FREDERICK STEARNS,

"Detroit, Mich."

The complainant continued in the employ of the defendant until the first day of May, 1890, and soon after called upon defendant for an adjustment of the stock account, which was refused, and thereupon a bill was filed, which was subsequently amended, and both the amended and the original bill prayed for an accounting to be taken under the direction of the court of the net earnings of the business of the defendant from and after March 27, 1885, and of the proportion of the earnings which should be credited to the account of the stock purchased by complainant; that in the event the stock was found to be fully paid for the court should decree specific performance; and that all dividends declared by the company from and after the date when the court should determine that the stock was fully paid for should be paid to the complainant, together with interest thereon; and that complainant be restored to all the rights and privileges of a stockholder in the company. To this bill of complaint the defendant interposed a demurrer, specifying with sufficient particularity the grounds of demurrer. The demurrer was overruled, and the defendant brings the case here for review.

The contentions made by defendant's counsel are, *first*, that there is no such consideration for the company's agreement that it should be specifically enforced in equity; *second*, that the terms of the agreement upon complainant's part to be performed are such that they could not be enforced specifically against the complainant, and that, therefore, the contract is not mutual and could not for this reason be specifically enforced; *third*, that the option given to the company to pay an amount to Johnston

measured by the stock earnings, instead of conveying the stock, in the absence of anything showing that the remedy in damages at law is inadequate, precludes relief in equity.

The first inquiry is as to the legal effect of this agreement. We think there is little difficulty in determining this and at the same time answering the contention that the agreement is without consideration. When the relations of the parties are considered, it is manifest that this agreement on the part of F. Stearns & Co. was a tender to complainant of an opportunity to become the owner of 20 shares of defendant's capital stock upon the terms of continuing in the employment of defendant until the net earnings of the stock should equal its face value. A provision was likewise made for a proportionate allowance in case he left the employ of the defendant without violating the business rules of the company. It was not a gratuity. It was a continuing offer. So far as the bill discloses, there was no contract obligation on the part of the complainant to remain with the defendant for any length of time under any previously existing contract. The contract discloses the purpose to compensate the complainant and to enlist his greater interest in his future employment by this bonus of stock, terms of employment not found unusual in business and when resting upon the adequate consideration of services to be rendered in the future, supportable upon every principle of justice and law. See *Price* v. *Minot,* 107 Mass. 49; *Sword* v. *Keith,* 31 Mich. 247.

The other points made are based, as we think, in part upon a misconception of the theory of the complainant's case. At the time this contract was made, these shares of stock were set aside, and a certificate was given to the complainant showing that they had been so set aside for complainant, and that they were held by the company as collateral security for the performance by him of the engagements necessary to entitle him to receive the stock.

This is the clear import of the certificate quoted above. But it is to be noted that the means of ascertaining whether and the time at which the net earnings of these shares had amounted to sufficient to cancel the obligation were necessarily within the control of the defendant. We can conceive of no reason, therefore, why the complainant is not entitled to have an accounting of the business sufficient to determine the question of whether these shares have been fully paid or if not what proportion have been paid, and, if paid out of the earnings of the company, at what time such payment was concluded. This to our mind is the chief purpose of this bill. The accounting is not, as is suggested, merely incidental to a specific performance of the contract. It is the real basis, or at least a sufficient basis, for the interposition of a court of equity. The bill avers that the defendant did in fact issue the shares of stock, but retained possession thereof as collateral security, and further avers the performance of all the conditions of the contract by the complainant. The defendant is therefore by this averment to be treated as a pledgee of this stock, and as such liable to account, and the accounting can be prayed for in equity. *Cochrane* v. *Adams*, 50 Mich. 16 (14 N. W. 681); *Richardson* v. *Welch*, 47 Mich. 309 (11 N. W. 172); *Warren* v. *Holbrook*, 95 Mich. 185 (54 N. W. 712, 35 Am. St. Rep. 554). See, also, *Price* v. *Minot*, 107 Mass. 49.

As to the scope of the relief which complainant is entitled to, it is perhaps not essential that that be determined on this hearing; but we see no difficulty such as is claimed by the defendant exists. It is suggested that the court cannot decree specific performance by the complainant of the provision that he shall not offer this stock to others for sale until after it has been offered to the defendant. While this may not entitle the complainant to the stock, relieved of such a condition, it certainly does not relieve the defendant of the obligation to transfer the stock upon being fully paid, and the court would have full

power to protect the defendant in that respect by its final decree.

The bill makes a case entitling the complainant to relief in equity, and the decree will be affirmed, with costs.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.