## KATHARINE JORDAN PEAVEY v. FREDERICK B. WELLS AND OTHERS.[1]

February 23, 1917.

Nos. 20,124—(253).

**Corporation — pledge of stock by defendants — transfer of title.**

1. The plaintiff's testate delivered to the defendants an instrument purporting to transfer corporate stock to them. They agreed by another instrument to pay for it its par value, with interest, out of dividends declared, and to apply all dividends to payment, and reserved the option but did not assume the obligation of paying from other sources. The stock was deposited with a custodian for the protection of the parties. It is *held* that the legal title passed to the defendants, and that the stock in the possession of the custodian was pledged to the performance of their agreement.

[1]Reported in 161 N. W. 508.

**Contract — no cancelation of executed agreement for mere want of consideration.**

2. The court found that the agreement of the defendants furnished no consideration for the transfer of the stock and entered judgment setting it aside. Conceding that the transaction was without consideration, and unenforceable if executory, it is *held* that, the transfer being executed and title having passed, equity will not set it aside for want of consideration alone.

Action in the district court for Hennepin county by the executrix of the estate of George W. Peavey, deceased. The facts are stated in the opinion. The case was tried before Jelley, J., who made findings and ordered judgment in favor of plaintiff. The motions of plaintiff and defendants to amend the findings and conclusions of law were denied. From the judgment entered pursuant to the order for judgment, defendants appealed. Reversed.

*Lancaster, Simpson & Purdy,* for appellants.

*Frank B. Kellogg, C. A. Severance, Robert E. Olds* and *Richard Reid Rogers,* for respondents.

Dibell, C.

Action in equity by Katharine Jordan Peavey, as executrix of George W. Peavey, against Frederick B. Wells, Frank T. Heffelfinger and Charles F. Deaver to set aside a transfer by Peavey of certain corporate stock in F. H. Peavey & Company to Wells and Heffelfinger. The stock is in the possession of Deaver as custodian. There were findings and judgment for the plaintiff and the defendants appeal.

1. The facts are not complicated, but to an understanding of the case their statement at some length is essential.

Frank H. Peavey died December 30, 1901, testate. At that time he, his son George W. Peavey, and his sons-in-law, Wells and Heffelfinger, were copartners under the name of F. H. Peavey & Company. In accordance with his wishes, expressed in his will, the surviving partners continued the business for five years and then organized the corporation of F. H. Peavey & Company, which took over the assets of the partnership. Each of the three copartners subscribed for 10,000 shares of stock of the par value of one million dollars, and each gave one note of $800,-

136 M.—13

000 and another note of $200,000 to the executors of Peavey. The executors, as directed by the will of Peavey, gave to the wife of Wells the $800,000 note made by him and to the wife of Heffelfinger the $800,-000 note made by him and to George W. Peavey his note of that amount. On September 18, 1907, some eight or nine months after the organization of the corporation, Peavey transferred 7,000 shares of the 7,800 then held by him to Wells and Heffelfinger. The instrument of transfer, except as to the witnesses and the formal acknowledgment, is as follows:

"Know all men by these presents, that I, George W. Peavey, of Minneapolis, Minnesota, for and in consideration of one dollar and other good and valuable considerations, to me in hand paid, the receipt whereof is hereby acknowledged, have given, granted, bargained, sold and transferred and do hereby give, grant, bargain, sell and transfer unto Frank T. Heffelfinger and Frederick B. Wells, both of Minneapolis, Minnesota, seven thousand (7000) of the 7800 shares of stock in the corporation of F. H. Peavey & Company, represented by certificate No. 28 of stock therein.

"And I do hereby authorize and empower F. L. Moffet, of Minneapolis, Minnesota, to indorse and execute any and all due and proper instruments of transfer and powers of attorney to make transfers on the said certificate No. 28 of the 7000 shares of stock hereby transferred for me and in my name, as may be necessary or proper to transfer all such stock.

"Witness my hand and seal this 18th day of September, 1907, at Jersey City, New Jersey.

"G. W. PEAVEY."

At the same time Wells and Heffelfinger made the following agreement, called a note, relative to payment:

"Minneapolis, Minnesota, September 18, 1907.

"On demand, for value received, we promise to pay to the order of George W. Peavey, at the office of the Minneapolis Trust Company, Minneapolis, Minnesota, seven hundred thousand dollars ($700,000) with interest thereon at four per cent per annum from August 1st, 1907, the interest payable quarterly on November 1st, February 1st, May 1st, and August 1st, in each year until full payment of this note; subject, however, to the condition that this note and the interest thereon are not

required to be paid otherwise than from the proceeds of dividends declared and paid upon 7,000 shares of stock in F. H. Peavey & Company for the purchase of which this note is given, or by the sale or application of the stock in payment as is hereinafter provided. A certificate or certificates for such shares of stock are hereto attached duly indorsed in blank as collateral security for the payment of this note and the interest thereon. All dividends on such stock are to be applied hereon until this note and the interest thereon is fully paid within ten days after the payment of any such dividends. Provided, however, that the makers hereof have at their option the right and privilege of making payment upon principal or interest of this note at any time from sources other than the proceeds of dividends declared and paid upon said stock. In default of the application to the payment of this note of any dividend declared and paid on such stock within ten days after payment thereof the then owner of this note may sell said stock at public or private sale, and apply the proceeds in payment of this note and cancel and surrender the same; or such owner of this note may at his option in place and stead of such sale take the said stock in full payment of the balance due on this note and cancel and surrender the note to the makers without sale.

"This note and said stock shall be left on deposit with the Minneapolis Trust Company as custodian for the protection of both parties. So long as all dividends paid on such stock are promptly applied on this note the stock shall be left to stand in the name of the makers hereof on the books of the company.

"FRANK T. HEFFELFINGER.
"F. B. WELLS."

This note was the same in form as those given by Peavey, Wells and Heffelfinger to the executors. The certificate for 7,800 shares was surrendered to the corporation and a new certificate for 7,000 shares was issued and delivered to Wells and Heffelfinger and with their note was then delivered to the trust company. On the same day Peavey, under a trust agreement, transferred the note with other property to Heffelfinger and Wells and the Minneapolis Trust Company in trust to pay certain of his debts from the income and to pay the balance to his wife, during her natural life, she, however, in the discretion of the trustees, to receive a sum not in excess of $20,000 per annum. The unexpended bal-

ance was to be applied in support of Peavey. In September, 1910, all the parties interested consenting, this trust agreement was canceled and Peavey, Heffelfinger and Wells, executed another agreement, providing that all payments of principal and interest on the $700,000 debt should be made to Peavey direct, or deposited in the Northwestern National Bank, or with such other bank or person as he might designate, and the note and stock were then deposited with Deaver to be held by him for the purpose specified in the note. Dividends amounting to four per cent per annum were paid upon the stock quarterly from November 1, 1907, to August 1, 1910, inclusive, aggregating $84,000, and were applied on the interest, and were received by Peavey and wife.

On June 8, 1913, Peavey died testate. His wife, the plaintiff, is his executrix. Since his death dividends aggregating $42,000 have been declared, and dividend checks have been delivered to the plaintiff but have not been converted.

The complaint seeks to set aside the transfer of stock upon various charges of fraud and upon the ground that it was without consideration. The court found that there was no fraud, but that the transfer was without consideration and judgment was entered vacating it and vesting title in the plaintiff.

The purpose of the parties is not in doubt nor is the result of the transaction uncertain. It was intended to vest title to the stock in Wells and Heffelfinger and to pledge it as security for the payment of the purchase price. That was the result. Title passed. It was understood that Peavey was selling and that Wells and Heffelfinger were buying. Peavey ceased to be a stockholder as to the 7,000 shares. Wells and Heffelfinger took his place. The transfer was not conditional. The delivery was absolute. The stock was put in the hands of the trust company not in escrow but in pledge. Nothing was conditional except payment. Peavey, who was the president of the corporation and an officer and director of the subsidiary companies of which the corporation was the holding company, resigned. The intention of the parties and the form of the transaction united in taking the legal title out of Peavey and putting it in Wells and Heffelfinger.

2. The trial court was of the opinion that the purpose of the parties could not be effectuated and the legal title be left where it was put be-

cause the transfer was without consideration. It was thought to be without consideration because Wells and Heffelfinger promised to do no more than apply the dividends declared in payment of interest and principal and without such agreement, the stock remaining in him, Peavey would have been entitled to them.

The evidence is not before us. The case was largely argued upon the assumption that the promise of the defendants was not a consideration for the transfer, that is, that the transfer was without consideration. We proceed upon that assumption. The defendants contend that conceding it to be so it was executed and equity will not set it aside for want of consideration alone.

At the outset we note that the case is not one of mutual promises—a promise in return for a promise. The contract is not bilateral. The only unperformed promise is that of Wells and Heffelfinger. They are not in default. Peavey did at once all he was to do. He did not merely promise to transfer the stock—he transferred it. The question is not whether, if Peavey had agreed to transfer his stock in return for the promise of the defendants to apply dividends until par and interest were paid, a court would enforce specific performance or award damages for a breach. Because a court will not compel performance of a naked promise, or give damages for its nonperformance, it does not follow that it will give relief to a party who has voluntarily performed.

The statement is frequent in the books that the rule requiring a consideration has no application to executed contracts. 1 Dunnell, Minn. Dig. § 1752; Hammon, Contracts, p. 631; Bishop, Contracts, § 80, et seq.; Williston, Sales, § 167; Walker v. Joseph Dixon Crucible Co. 47 N. J. Eq. 342, 20 Atl. 885; Grove v. Hodges, 55 Pa. St. 504; Lammers v. Wolfertz (Tex. Civ. App.) 164 S. W. 1102; Sooy v. Winter, 188 Mo. App. 150, 175 S. W. 132; National City Bank of Chicago v. Wagner, 216 Fed. 473, 132 C. C. A. 533. Naturally enough the situations to which the principle is most often applied do not illustrate the present controversy. The case is unusual in its facts. Three cases are cited which we particularly note: Dean v. Nelson, 10 Wall. 158, 19 L. ed. 926; White v. C. & G. Cooper Co. 27 Oh. Cir. Ct. 703, affirmed without opinion in Kirk v. White, 72 Oh. St. 615, 76 N. E. 1127, and on rehearing in 72 Oh. St. 691; Fowler v. Fowler (C. C.) 135 Fed. 405,

affirmed in 140 Fed. 986, 71 C. C. A. 344. The first two involved sales of corporate stock with agreements to pay out of dividends. There may have been a consideration in Dean v. Nelson, 10 Wall. 158, 170, but the decision was put upon the ground that it was executed and that the transfer would not be set aside for want of consideration. The court said: "Had the transaction been merely an agreement for a sale upon the terms on which the sale was actually made, and this a bill by the vendees for specific performance, we should find great difficulty in distinguishing this case from that of Dorsey v. Packwood, 12 How. 126. But here the sale was actually made, and the stock was actually transferred to Nelson, so that, in the absence of fraud, it became absolutely his." The case of Dorsey v. Packwood, referred to, involved an agreement to convey a plantation to the grantee as soon as he should pay an agreed price out of his own means or out of the profits. It was executory and lacking in mutuality. After referring to certain circumstances suggestive of the existence of a consideration the court continued [10 Wall. 171]: "But, at all events, the stock was actually sold and transferred, and became the property of Nelson, and was possessed by him. The contract was an executed contract, and that transaction cannot now be impeached." White v. Cooper involved a sale of corporate stock to be paid for out of dividends. We gather from the report that the court spelled out of the transaction a consideration; but in any event it followed the rule of Dean v. Nelson as to an executed consideration. Fowler v. Fowler, 35 Fed. 405, 407, involved the transfer of the property of an estate of a decedent in consideration of the payment to the transferor "during the term and period of her natural life, one-half of the net income, profit or revenue, issuing out of or arising from the personal property of the said decedent," and upon the death of the transferor payments were to cease. It was held that the transfer was in the nature of an executed gift and unless fraudulently obtained would not be set aside in equity.

We see nothing in Stewart v. Herron, 77 Oh. St. 130, 82 N. E. 956, or Johnston v. Frederick Stearns & Co. 160 Mich. 247, 125 N. W. 29, opposed to the view of the cases cited. They involved agreements for the sale of corporate stock to employees to be paid out of dividends. In

each a consideration was found. They were enforceable though executory. They were not contracts of the character of the one before us.

An executed gift cannot be recalled at the donor's will. It may be rescinded for fraud. If Peavey had transferred the stock to the defendants in the form he did, without an agreement for payment, intending an unconditional gift, he could not have recalled it. He did not make a gift. He transferred title just as he would have transferred had he intended a gift and made one. The difference is that, instead of transferring for nothing, he chose to exact something in return with the sufficiency of which he was satisfied. He may have been wise or he may have been unwise. We are not concerned to know. In the absence of fraud his act is final.

We follow the doctrine derived from Dean v. Nelson and other cases, supra, and hold that the plaintiff cannot avoid the transfer of the stock for want of consideration alone.

In reaching this decision we have assumed that Peavey's transfer was without consideration. We do not decide it. It is not quite accurate to say that he was merely to get dividends accruing upon his own stock. He parted with his stock. It is not entirely clear that the defendants in taking the stock did not assume obligations not before resting upon them. It is quite conceivable that a large stockholder actively engaged in the management of a corporation might sell to his costockholders, also active in the management, in return for a promise to pay an amount equivalent to par value and interest out of dividends, resign and escape the burdens of active management, his costockholders assuming the burden and risk of carrying on the corporate enterprise and whatever added liability and responsibility came from their increased stockholdings, and the transfer be supported by a consideration. A particular case of the general nature supposed might be attended with elements constituting consideration. The cases which we have cited indicate a readiness in the courts to seize upon circumstances on which may be rested a consideration. Dean v. Nelson, 10 Wall. 158, 19 L. ed. 926; White v. C. & G. Cooper Co. 27 Oh. Cir. Ct. 703; Stewart v. Herron, 77 Oh. St. 130, 82 N. E. 956; Johnston v. Frederick Stearns & Co. 160 Mich. 247, 125 N. W. 29. The evidence is not here, the court found that there was no

consideration, and we leave it so. We make it plain that the question is not foreclosed.

Judgment reversed.